606 A.2d 1181

**Teresa BALL, Appellant,**

v.

**Thomas MINNICK.**

Superior Court of Pennsylvania.

Argued Sept. 12, 1991.

Filed April 8, 1992.

244

Donald R. Shroyer, Greensburg, for appellant.

William D. Garvin, McKeesport, for appellee.

Before WIEAND, McEWEN, OLSZEWSKI, DEL SOLE, BECK, TAMILIA, POPOVICH, JOHNSON and HUDOCK, JJ.

TAMILIA, Judge:

Appellant, Teresa Ball, takes this appeal from the March 9, 1990 Order directing appellee, Thomas Minnick, to pay, *inter alia*, total support in the amount of $400 per month for his two children. This Order followed a *de novo* hear-

ing before the Honorable John E. Blahovec of the Court of Common Pleas of Westmoreland County. The relevant facts of this case, as stated by the trial court, are as follows.

> Plaintiff resides with her husband, their child and the two children of the parties who are the subject of the current support order. Plaintiff has been employed as a waitress, and has a minimum wage earning capacity. She is currently off work after having surgery, but plans to return to work in the near future. Her present husband is not employed and no explanation of his status was presented at trial. It is axiomatic that he has a duty to contribute to the support of his wife and child. The total monthly budget of Plaintiff's household is $850.00 per month. The parties children constitute forty per cent of that household, and the sum of $340.00 per month reflects their reasonable needs. The Court has concluded that the reasonable needs of the children are about $400.00 per month.
>
> Defendant earns $1,705.00 per month. He resides with his wife and her two children from a prior union. Application of the support guidelines at $1,705.00 per month for defendant and $400.00 per month earning capacity for plaintiff suggests an Order of $513.00 per month.

(Slip Op., Blahovec, J., 3/27/90, p. 1.)

On appeal, appellant argues the trial court erred in determining appellee's child support obligation. Appellant also argues more broadly that the *Melzer*[1] formula and the mandatory uniform support guidelines are inconsistent with each other, and that, by their very nature, the support guidelines supersede the *Melzer* formula for calculating support payments.

■ This Court's standard of review for support awards is a narrow one based upon abuse of discretion. Abuse of discretion in these matters requires more than mere error of judgment, rather it requires an overriding or misapplica-

1. *Melzer v. Witsberger,* 505 Pa. 462, 480 A.2d 991 (1984).

tion of the law or a manifestly unreasonable exercise of judgment. *Caplan v. Caplan*, 400 Pa.Super. 352, 583 A.2d 823 (1990).

The issue as stated by appellant is whether the court failed to correctly determine the father's child support obligation.

In this case the Court en banc is called upon to determine whether the guidelines are applicable in the face of evidence establishing that the needs of the children are less than the amount provided by the guidelines and the excess would benefit other members of the household for whom the husband has no legal responsibility.

█ We must determine whether the presumption established by the guidelines is absolute or subject to judicial discretion based on evidence that permits application of the *Melzer* formula or other rationale established through case-law over the years.

Our consideration of this matter is aided by recently decided cases which have considered the issue of the binding effect of the guidelines and whether they have superseded totally *Melzer* and the exercise of judicial discretion.

At the outset, it is clear that no case since the inception of the guidelines has overruled *Melzer* and several cases directly or by implication have held that the *Melzer* formula remains a viable concept in determining the apportionment of support obligation for children. It goes without saying that as an intermediate appellate court, we have neither the authority nor inclination to overrule a decision of the Supreme Court.

Secondly, no majority decision in this Court or the Supreme Court has held the guidelines supersede all previous case law or the discretion of the trial court in establishing a reasonable support Order. Historically, guidelines and formulas were repudiated specifically by appellate decisions on the theory each case was unique and only a trial judge, upon review of all of the evidence concerning the needs of the spouse and/or child and the ability of the legally respon-

sible party to pay, could determine the amount of the Order which had to be fair and reasonable and not confiscatory.

A brief historical review of the caselaw and statutory law in Pennsylvania may help in understanding why trial judges have such broad discretion and short of a total rejection of the historical evolution of support law, we may not attribute to the rules committee such a dramatic and fundamental change.

It has always been a fundamental rule of common law that the husband owes a duty to make reasonable provisions for the support of his wife in conformity with his means and the station in life of the parties. *Commonwealth v. Berfield*, 160 Pa.Super. 438, 51 A.2d 523 (1947). The law was changed as a result of the Support Law of 1937, as amended, 62 P.S. § 1971 *et seq.* (repealed as to procedure and governed by Pa.R.C.P. 1910.1 *et seq.*), providing that "[t]he husband, wife, child ..., father and mother of every indigent person ... shall ... assist such indigent person ... as the court ... shall order or direct." The equal rights amendment and a finding by the Supreme Court that spouses had an equal obligation for support of each other when in need even as to in rem proceedings pursuant to the Act of 1907, 48 P.S. § 131 *et seq.*, made this duty equal to both spouses. *See Commonwealth ex rel. Stein v. Stein*, 487 Pa. 1, 406 A.2d 1381 (1979). A father at common law also has the primary duty to support his dependent children. *In re Harlands Account*, 5 Rawles 323; *In re Schwabs Account*, 355 Pa. 534, 50 A.2d 504 (1947); *Commonwealth ex rel. Bortz v. Norris*, 184 Pa.Super. 594, 135 A.2d 771 (1957).[2] The duty remained un-

---

2. In the 1750s, Blackstone said:

The duty of parents to provide for the *maintenance* of their children, is a principle of natural law.... by begetting them, therefore, they have entered into a voluntary obligation, to endeavour, as far as in them lies, that the life which they have bestowed shall be supported and preserved. And thus the children will have a perfect *right* of receiving maintenance from their parents.

And the manner, in which this obligation shall be performed, is thus pointed out. The father, and mother, grandfather, and grandmother of poor impotent persons shall maintain them at their own

changed until the Supreme Court determined because of the passage of the Equal Rights Amendment in Pennsylvania in 1971, Pennsylvania Constitution, Article I, § 28, the Constitution required that the duty to support must be shared equally by both parents. *See Conway v. Dana*, 456 Pa. 536, 318 A.2d 324 (1974).

Procedurally there were civil, summary, quasi criminal and criminal procedures to enforce the duties. The civil remedies began with the Act of 1907, 48 P.S. §§ 131–141 (repealed, now contained in 23 Pa.C.S. § 4321), which provided for the civil enforcement of support, 48 P.S. 132 (now 23 Pa.C.S. § 3703), 48 P.S. 136 (now 23 Pa.C.S. § 4348), 48 P.S. 137 (now 23 Pa.C.S. § 4361), 48 P.S. 138 (now 23 Pa.C.S. § 4362), 48 P.S. 139 (now 23 Pa.C.S. § 4363), 48 P.S. 140 (now 23 Pa.C.S. § 4364), 48 P.S. 141 (now 23 Pa.C.S. § 4365). 23 Pa.C.S. § 4366, Other enforcement remedies preserved, provides that other existing remedies to enforce support orders, including but not limited to the right of plaintiff to institute proceedings against real or personal property of the defendant, are preserved. It is significant that these acts were only repealed for reenactment in the Domestic Relations Code, *as is the case with all relevant support and property laws* relating to spouse and children. It is important to note these early provisions for enforcement were limited to courts of competent jurisdiction, which meant that in Pennsylvania jurisdiction was vested in the Courts of Common Pleas pursuant to standard civil procedure practice. Historically, support proceedings as a separate aspect of court jurisdiction began with the creation of statutory provisions for summary/quasi criminal proceedings pursuant to the Act of 1939 as amended by the Act of 1956, P.L. 1494; 18 P.S. § 4322 (repealed, remnants of which are retained in 23 Pa.C.S. § 4354) and Willful Failure

charges, if of sufficient ability, ... and if a parent runs away, and leaves his children, the churchwardens and overseers of the parish shall seize his rents, goods, and chattels, and dispose of them toward their relief.

I.W. Blackstone, Commentaries on the Laws of England, 447–448 (1965).

to Support Act of 1939 (misdemeanor), 18 P.S. § 4324 (now covered within 23 Pa.C.S. § 4354). Failure to support a bastard was also a misdemeanor (as well as fornication and bastardy by which paternity was established) pursuant to the Act of 1939, 18 P.S. § 4323 (repealed in 1985, now contained in the Domestic Relations Code, 23 Pa.C.S. § 4343, entirely as a civil action).

It is significant that until 1953 with the enactment of the Civil Procedural Support Law, 62 P.S. § 2043-43 (repealed and reenacted in 42 Pa.C.S. § 6701 in 1978, now codified in 23 Pa.C.S. in various sections under Part V, Support, Property and Contracts and under the Pennsylvania Rules of Civil Procedure, 1910.1–1910–49), the primary means of obtaining a support Order was to initiate a *summary proceeding* before a magistrate or domestic relations office, or to proceed by *indictment* on the misdemeanor charge with trial before the Court of Quarter Sessions. Jurisdiction in these matters in all of the courts in Pennsylvania except in Allegheny County and Philadelphia County was conferred on the Court of Quarter Sessions by the Act of 1939, 18 P.S. § 4733. In Philadelphia County, exclusive jurisdiction in such cases had been conferred on the Municipal Court of Philadelphia County, Act of 1913, 17 P.S. § 694. In Allegheny County, jurisdiction was conferred on the Allegheny County Court by the Act of 1911, 18 P.S. § 625. Those statutes also provided for probation departments to assist in the work of the courts in these matters (now covered by 42 Pa.C.S. § 961 Domestic Relations Sections). The late 1950's and 1960's saw a substantial movement to remove support matters from criminal proceedings to civil proceedings pursuant to the Civil Procedural Support Act. As criminal proceedings, authority could not be delegated to domestic relations personnel and the court was ultimately responsible for the adjudication and sentence to pay support. With the movement adopting civil procedures, innovative techniques to provide for agreement Orders, conciliation, wage verification, wage attachment and collection procedures were developed internally under local rules

or by administrative action and by virtue of these informal procedures much of what is now incorporated into the support rules and Domestic Relations Code were tried, tested and proven to be desired alternatives to full hearings in every case. At no time, however, was the discretion of the court compromised or the informality of the proceedings a substitute for judicial action.[3]

In 1968, the Constitutional Convention recognized the critical nature of family cases and in the implementation schedule to Article V, the Judiciary, provided at section 16, Courts and Judges (as to Philadelphia):

(q) The Court of Common Pleas through the family court division of the Court of Common Pleas shall exercise jurisdiction in the following matters:

i. Domestic Relations: desertion or nonsupport of wife and children and indigent parents, including children born out of wedlock; ....

As to Allegheny County, at section 17 Courts, it provided:

(b) Until otherwise provided by rule of court of common pleas, the court of common pleas shall exercise jurisdiction in the following matters through the family court division:

i. Domestic Relations: Desertion or nonsupport of wives, children and indigent parents, including children born out of wedlock; ....

As to all other courts in Pennsylvania, section 4, the Courts of Common Pleas provided:

Until otherwise provided by law, the several courts of common pleas shall exercise the jurisdiction now vested in the present courts of common pleas. The courts of oyer and terminer and general jail delivery, quarter sessions of the peace and orphans courts are abolished and the several courts of common pleas shall also exercise the jurisdiction of those courts....

3. *See* Tamilia, *The New Pittsburgh Family Court,* Pa.Bar Association Quarterly, Vol. XL, March, 1969, No. 3.

These sections have all been superseded by the Judicial Code, 42 Pa.C.S. §§ 951, 952, which retains the essence of the above provisions. Thus in the evolution of the handling of support matters, while we have moved entirely to a civil proceeding and informal rules and procedures have been formalized by the rules and legislation, in no respect has the authority of the court and perforce, the discretion of the trial judge been diminished. If we were to hold the guidelines are mandatory and the court does not have a vital role in exercising discretion, we would be ignoring almost a century of evolving statutory and case law. It can be documented by a more thorough historical analysis than has been presented here, that the contents of the Domestic Relations Code and the Rules of Civil Procedure concerning support have continued in an unbroken chain of progression with little rejection of prior law or precedent, except as to the period between 1939 and 1953, when criminal proceedings were mandated. Thereafter, primarily by leadership within the trial courts, there occurred a gradual shift to civil procedures made available through the Civil Procedural Support Law. Those techniques developed within the domestic relations courts and offices were gradually adopted and refined by the Civil Rules Committee after its creation, beginning in about 1981. *See* Pa.R.C.P. 1910 Actions for Support, Explanatory Comment—1981. The application of the body of case law as to duty to support and ability to pay, however, has never changed.[4]

In recent times, because of the ever increasing case load and the need to expedite actions, the requirement that all support matters are to be determined judicially in the first instance, and neither formulas nor guidelines could be applied, has undergone modification. Legislation has provided for alternative means of hearing cases, pursuant to 23

4. *See* Report of the Domestic Relations Task Force to the Court Administrator of Pennsylvania, May 23, 1980; the Task Force, with approval of the Chief Justice, was created June 4, 1978 by Judge Alexander F. Barbieri, Court Administrator of Pennsylvania. This Task Force committee was the forerunner of the subcommittee on Domestic Relations, now part of the Civil Rules Committee.

Pa.C.S. § 4342, Expedited procedure, which requires the Supreme Court by general rule to provide for expedited procedures for determination and enforcement of support including an office conference. In response thereto, the Supreme Court promulgated Rule 1910.11, Office Conference. Subsequent Proceedings. Order, utilizing a hearing officer with summary to the court and right to de novo hearing before the court; and Rule 1910.12, Office Conference. Hearing. Record. Exceptions, Order, utilizing a permanent hearing officer who is a lawyer, with a stenographic record and recommendations to which exceptions may be filed, from which an appropriate Order will be made by the court. The court, as justice requires, still retains the power to hear cases in the first instance where they are complex or likely to be protracted. *See* Rule 1910.11(j).

The requirement for imposition of statewide guidelines was established by statute, 23 Pa.C.S. § 4322, Support guideline, to be established by general rule by the Supreme Court. *See* Pa.R.C.P. 1910.16–1—1910.16–5.

Section 4322(a) provides in pertinent part:
The guideline shall be based upon the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support. In determining the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support, the guideline shall place primary emphasis on the net incomes and earning capacities of the parties, with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention.

The statute goes further and in subsection (b) provides:
**(b) Rebuttable presumption.**—There shall be a rebuttable presumption, in any judicial or expedited process, that the amount of the award which would result from the application of such guideline is the correct amount of support to be awarded. A written finding or specific finding on the record that the application of the guideline would be unjust or inappropriate in a particular case shall

be sufficient to rebut the presumption in that case, provided that the finding is based upon criteria established by the Supreme Court by general rule....

*Id.* This case narrows down to the single issue of whether the trial court is compelled to apply the guideline amount when in his discretion that amount is unreasonable under the facts of the case.[5]

■ Unless we find the legislature intended the guidelines to be mandatory and the discretion of the court limited to application of the guidelines without considerations expounded in *Melzer, supra,* and a century of judicial interpretation of support law, we must hold that they are not mandatory. Reading from the statute implementing the guidelines, it is clear that the guidelines *must be based upon the "reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support."* 23 Pa.C.S. § 4322(a) (emphasis added). The entire statement, including the requirement that the guidelines shall place primary emphasis on the net income and earning capacities of the parties, with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention, *contains provisions which are identical to those standards which trial judges have been applying to establish support Orders from time immemorial.* Like the *Melzer* formula, which pursued the same end, that is, "so persons similarly situated shall be treated similarly," the interrelationship of the parties, needs and ability to pay are to be incorporated in any guideline figure. *Melzer* establishes an individualized, detailed calculation of those factors to establish the appropriate support Order. The guidelines provide a *starting point* from which the court can, if necessary, individualize the support Order. What has caused confusion in the application of the guidelines is section 4322(b), Rebuttable presumption, that the amount of the award which would

5. A secondary issue to be discussed infra is whether the trial court properly established the needs of the children aside from the incorporated needs with that of the family. *See Beegle v. Rasler,* 395 Pa.Super. 174, 576 A.2d 1100 (1990).

result from the guideline is the correct amount of the support to be awarded. While some would convert this to a mandatory presumption, that section itself provides it is rebuttable by a written finding or specific finding on the record that the guidelines would be unjust or inappropriate in a particular case.

In adopting the guidelines, the Supreme Court provided in Pa.R.C.P. 1910.16–5, Support Guidelines. Operation, as follows:

### RULE 1910.16–5 SUPPORT GUIDELINES. OPERATION

**(a) Applicability of the Support Guidelines.** The support guidelines set forth the amount of support which a spouse or parent should pay on the basis of both parties' monthly incomes and the number of persons being supported. The support of a spouse or child is a priority obligation, so that a party is expected to meet this obligation by adjusting his or her other expenditures.

A hearing officer or permanent hearing officer may make a recommendation, and the court may enter an order, without explanation if it falls within the specified deviations from the guideline figure. But, if a recommendation or an order departs from the guideline by more than the standard deviation, the hearing officer, permanent hearing officer or court is required to make findings of fact and give an explanation for the recommendation.

*The support guidelines are a starting point only. They must be applied taking into consideration the special needs and obligations of the parties. The hearing officer, permanent hearing officer or the court must consider all relevant factors, including the following:*

(1) unusual needs and unusual fixed obligations;

(2) other support obligations of the parties;

(3) other income in the household;

(4) ages of the children;

(5) assets of the parties;

(6) medical expenses not covered by insurance;

(7) standard of living of the parties and their children; and

(8) other relevant and appropriate factors.

*Id.* (emphasis supplied).

If the guidelines are a *starting point* and their application is a *rebuttable presumption,* allowing numerous considerations and broad use of judicial discretion in deviating from the guidelines, no reasonable interpretation of the legislative intent allows room to find the guidelines are mandatory.

A consideration which confuses the issue and would have some persons find the guidelines must be applied in all instances, thereby repudiating *Melzer,* is the adoption by the Rules Committee, in the Explanatory Comment to Rule 1910.16–1, of an Income Shares Model, developed by the Child Support Guidelines Project of the National Center for State Courts, which leaves no room for a *Melzer* application. The Income Shares Model is predicated on the concept that the child should receive the same proportion of parental income that he or she would have received if the parents lived together. This is an ideal which is difficult of achievement and *support based on this model is derived from economic studies and averages and not by determination of specific need as related to ability to pay. See* Pa.R.C.P. 1910.16–1, A. Income Shares, Explanatory Comment—1989. To make the assumption that *Melzer,* which complies with the mandate of section 4322(a), "The guideline shall be based upon the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support[,]" is superseded by the application of the Income Shares Model, based on economic studies and averages, is unwarranted and untenable.

Thus we conclude the guidelines are not mandatory, but a starting point and by implication they cannot and do not supersede *Melzer* or deny the trial judge or hearing officer of the discretion to mold support Orders to meet the specific conditions of the parties.

■ This does not, however, mean the guidelines are not relevant in most cases or that an Order must be rejected if *Melzer* is not applied in addition to or in lieu of the guidelines. We have struggled for several years over the application of the guidelines vis a vis *Melzer* and in some cases the results have been confusing if not conflicting. The line of cases propounding various views may be divided into three categories, the first being those that hold *Melzer* is controlling and the guidelines in all instances must be rejected unless *Melzer* has been applied. *Racciato v. Racciato*, 393 Pa.Super. 307, 574 A.2d 625 (1990); *Marshall v. Ross*, 373 Pa.Super. 235, 540 A.2d 954 (1988); *Ryan v. DeLong*, 371 Pa.Super. 248, 538 A.2d 1 (1987); and *DeWalt v. DeWalt*, 365 Pa.Super. 280, 529 A.2d 508 (1987). A second line of cases holds that *Melzer* must be applied in conjunction with the guidelines. *Blaisure v. Blaisure*, 395 Pa.Super. 473, 577 A.2d 640 (1990); *Olson v. Olson*, 384 Pa.Super. 224, 558 A.2d 93 (1989); *Szillery v. Wheaton*, 382 Pa.Super. 394, 555 A.2d 237 (1989); and *Shutter v. Reilly*, 372 Pa.Super. 251, 539 A.2d 424 (1988); *see Racciato, supra*, which appears to go both ways. Finally, there is a more recently developing line of cases which holds that if either *Melzer* or the guidelines are properly applied and they either have been harmonized or application of one or the other has been waived, the court is not guilty of an abuse of discretion. *Horst v. Horst*, 406 Pa.Super. 188, 593 A.2d 1299 (1991); *Seawalt v. Muldoon*, 406 Pa.Super. 94, 593 A.2d 886 (1991); *Marshall v. Marshall*, 404 Pa.Super. 628, 591 A.2d 1060 (1991); *Coffey v. Coffey*, 394 Pa.Super. 194, 575 A.2d 587 (1990); and *Lampa v. Lampa*, 371 Pa.Super. 1, 537 A.2d 350 (1988). This latter view is the only tenable approach the courts may take in balancing the great body of caselaw and statutory law with the legislative and Supreme Court mandate that guidelines are to be utilized.

The legislative directive which resulted in the creation of the guidelines emanated from two federal legislations which required statewide guidelines. *See* Child Support Enforce-

ment Amendments of 1984, P.L. 98–378 and 45 C.F.R. 202.56.[6] This legislation was deemed necessary because of the haphazard and inconsistent fashion in which support Orders were formulated nationwide. The guidelines *and Melzer* address this issue and if one or the other are utilized in every case, in an appropriate fashion, the legislative intent, both federal and state, will have been achieved. The single drawback to the use of guidelines is they are mechanistic and may substitute one injustice for another, unless judges and hearing officers apply discretion in proper cases to meet individual circumstances.[7] Without allowance for discretion, guidelines will in many cases be the refuge for the exercise of arbitrary and unwarranted Orders which result in greater enforcement problems. It goes without saying that large segments of our poor are women and children who are suffering from financial abandonment by legally obligated husbands or fathers. At least one-half of

**6.** The 1984 amendments require states to establish discretionary guidelines for child support awards. Toward that end, the amendments provide:

    (a) Each State, as a condition for having its State plan approved under this part, must establish guidelines for child support award amounts within the State. The guidelines may be established by law or by judicial or administrative action.

    (b) The guidelines established pursuant to subsection (a) shall be made available to all judges and other officials who have the power to determine child support awards within such State, *but need not be binding upon such judges or other officials.*

    (c) The Secretary shall furnish technical assistance to the States for establishing the guidelines, and each State shall furnish the Secretary with copies of its guidelines.

    (d) The amendment made by subsection (a) shall become effective on October 1, 1987.[34]

34. 1984 Amendments, ... § 18, 98 Stat. 1305, 1321–22 (codified as amended at 42 U.S.C.A. § 667 (West Supp.1989)).
Child Support Enforcement Amendments of 1984, P.L. 98–378 and 45 C.F.R. 202.56 (emphasis added).

**7.** Pa.R.C.P. 1910.16–1, **Support Guidelines,** Explanatory Comment— 1989 Conclusion, states:

    The Domestic Relations Committee recognizes that the support guidelines may not be "ideal." However, it is believed that they represent an improvement over present methods of awarding support. The new guidelines are a beginning in fulfilling the statutory mandates which must be implemented.

the problem lies with the collection process rather than the Order of support itself. A confiscatory or overly burdensome Order entered without full consideration of ability to pay and needs of both obligor and obligee simply results in inability to comply. The best Order in all cases is the one which is unassailable because it was properly constructed in the first instance and this can only be accomplished by well considered factors thoughtfully and legally applied.

█ Support Orders are created in an adversarial process, even when entered as a result of agreement by the parties. It is abundantly clear what the responsibility of both parties is with respect to providing the basic figures necessary to establish need and ability to pay. Both the guidelines and *Melzer* require establishing a monthly net income figure (Rule 1910.16–5), consideration of divided or split income child care expenses and income of another non-liable adult in the household. Rule 1910.26 provides for a comprehensive income and expense statement and Rule 1910.27 provides for an Order to obtain wage information. If the parties wish to have a unique and explicitly detailed support Order concerning their private circumstances, the wherewithal is there to provide one within the *Melzer* formula. Even if *Melzer* did not exist, the same formulation could be derived from precedent going back 50 years. *Horst, supra.* If the parties wish to have the guidelines apply with certain qualifiers, that is equally available to them. Should the parties wish to do nothing and accept the guidelines as a straightforward resolution of their support matters, this is also available. It is not for us to determine across the board that any of these methods is prohibited or that one has been superseded or has precedence over the other.

Our analysis in *Marshall, supra,* is appropriate to cite here:

The guidelines acknowledge that in some instances they do not apply, particularly where the joint spousal income amount is more than $8,000 (Pa.R.C.P.1910.16–5(d)). These cases require the support to be calculated by the

formula provided by Rule 1910.16–3, **Support Guidelines. Formula.** Either the formula *or* the guidelines provided by the rules may be used to calculate support. Since the guidelines have provided alternate means of establishing a support Order, does this mean that no other method is available? As discussed above, the guidelines draw their validity from long-established principles of support law. The guidelines are a starting point and do not negate the discretion of the trial judge in their interpretation and application of the guidelines. Neither the trial court nor this Court can ignore the guidelines. However, if a trial judge or hearing officer, with full knowledge of the guidelines, applies case law and properly weighs the applicable considerations to determine the needs of the child and/or spouse, the ability of the obligor to pay considering calculation of net income and related variables which allowably reduce net income *or* increase need, then failure to use the guidelines or guideline formula will not be a basis for reversal.

. . . .

Secondly, if a reasonable support Order is decreed using the *Melzer* formula as opposed to the guidelines, it will be affirmed. The mandatory application of *Melzer* is no more required than the application of the guidelines but both must meet the test of reasonableness. . . .

. . . .

We cannot nullify the line of cases which have held that the *Melzer* formula is the underlying basis upon which a court Order must be founded, *DeWalt v. DeWalt,* 365 Pa.Super. 280, 529 A.2d 508 (1987), and that the calculation of that formula must appear of record. *Ryan v. DeLong,* 371 Pa.Super. 248, 538 A.2d 1 (1987); *Marshall v. Ross,* 373 Pa.Super. 235, 540 A.2d 954 (1988). These cases focus on the fact that guidelines, whether the ones adopted here or the ones based on a cost sharing approach, do not rely on a precise specification of the

minimal amount necessary to support the child, but instead, set an idealized figure based on the income of the parents. *See* O'Donnell, Smith and Smith: "No Magic Formula for Determining Child Support Payments of the Non–Custodial Parent," 18 Will.L.Rev. 356.67 (1982).

Since this Court, as seen above, takes divergent approaches in this matter, it is necessary to view the matter so as to accommodate both views. This is accomplished by finding that neither *Melzer* nor the guidelines can be ignored. When the guidelines are utilized, objection is made and it is factually established they fail to produce a result which is within reasonable range of what *Melzer* would have produced, then the guidelines will not prevail. If *Melzer* is properly utilized, it is unlikely that the guidelines could be of greater validity as being less specific and detailed. If the guidelines are used and no attempt is made to weigh the result against *Melzer* at trial or upon review, then it is presumed the issue is waived and the guideline amount will be tested against the internal standard or the formula approved by the guidelines.... This does not mean that the court must run a *Melzer* formula *and* a guideline application in every case. Rather, it means the court may apply the guidelines, but if one of the parties proposes a *Melzer* calculation that seriously conflicts with the guidelines, the court must be able to explain the difference. *Melzer* and the guidelines remain viable. *See [Lesko v. ] Lesko, supra* [392 Pa.Super. 240, 572 A.2d 780] [ (1990) ]. It also means that if the court utilized neither the guidelines nor the *Melzer* formula, and the resulting support Order does not come within a reasonable degree of conformity with a *Melzer* calculation, it will be reversed and remanded.

*Id.,* 404 Pa.Superior Ct. at 637–40, 591 A.2d at 1065–66.

■■■■ In summation, we hold the guidelines are not mandatory but may be the basis for a support Order when properly applied in accordance with the qualifying provisions. The court has reasonable discretion to deviate from

the guidelines if it appears to be necessary and is supported by the record. Failure to validate the guideline determination by a *Melzer* analysis is not error or grounds for reversal. Application of a *Melzer* analysis in lieu of the guidelines, once the guideline figure has been ascertained, will not be a basis for reversal if *Melzer* has been properly applied. Failure to propose a *Melzer* formulation by a party will result in waiver of consideration of that manner of deriving a support Order on appeal. As we stressed above, the traditional broad discretion in the trial court to determine these matters remains unrestricted.

Directing ourselves to the facts of this case, we hold the trial court had the discretion to ignore the guidelines when they appeared to be inapplicable to the facts of this case. As we stated above, the parties must bring to the court the necessary data upon which the court establishes the support Order, whether by the guideline method, *Melzer* or direct computation based on the traditional standards.

Here, the court determined the total needs of the family as computed from the information supplied would result in the guideline figure providing 60 per cent of the entire support to the mother's family, consisting of the two children of appellee/husband as well as the appellant's spouse and their child. The appellant's family also receives public assistance, food stamps and energy assistance which underwrites their support. The appellant estimated the family's expenses at $850, thus the finding by the court that $513, the guideline grid amount, would comprise 60 per cent of the basic family budget. In attributing minimum wage income to the appellant ($400 per month) and ignoring income earned by appellee's wife and making no allowance for potential earnings of the appellee's unemployed husband, the court side-stepped many of the considerations that would have weighed in a *Melzer* formulation. We cannot say that it was an abuse of discretion in failing to apply the guidelines, but it is evident a simple division of the needs of the appellant's family into four parts to arrive at the needs

of the two children satisfies neither *Melzer* nor the guidelines nor any other method of establishing child support.[8]

▮▮▮ What is absolutely clear from the history of support laws, the *Melzer* formula and the guidelines is that the needs of the children must be ascertained. *Seawalt, supra; Beegle v. Rasler,* 395 Pa.Super. 174, 576 A.2d 1100 (1990). This must then be related to the net income of the responsible parents and their own living expenses to establish a fair, reasonable and nonconfiscatory Order. It should not be a monumental task to establish on the record what those needs are and to relate them to the income of the parents and their ability to pay. Since the court itself questioned the amount put forth by the appellant as representing the true expenses of the family, it is likely that a detailed account of the needs of the children will put this doubt to rest. We leave to the discretion of the trial judge the manner in which he will incorporate the findings on the needs of the two children in the final computation of the support Order, consistent with this Opinion.

The Order of the trial court is reversed and the case remanded for further hearing consistent with this Opinion.

Jurisdiction relinquished.

Concurring opinion by DEL SOLE, J., joined by BECK, J.

Concurring opinion by BECK, J., joined by DEL SOLE, J., McEWEN, J., concurring in the result.

Dissenting opinion by WIEAND, J., joined by JOHNSON and HUDOCK, JJ.

Dissenting opinion by JOHNSON, J.

8. To ascertain the children's needs, the court took appellant's monthly family budget ($850) divided by the number of persons in the family (5) and obtained an individual pro rata amount of $170 ($850 ÷ 5 = $170). The needs of the two children were set at 2 × 170 = 340 and then rounded up to $400.

DEL SOLE, Judge, concurring:

I join the Concurring Opinion of my colleague, Judge Phyllis Beck. However, I believe it is necessary to further answer the argument that the *Melzer* formula has viability in support cases that fall within the Support Guideline ranges.

*Melzer* begins by requiring that the "reasonable expenses of raising the children involved, based upon the particular circumstances—the needs, the custom, and the financial status—of the parties" must be determined. 505 Pa. at 471, 480 A.2d at 995. Next the ability of the parents to support the children must be determined, based upon the reasonable living expenses of the parent. After these findings are made, the court then applies the formula set forth *Melzer.*

In my view, the legislatively mandated guidelines, are designed to comply with *Melzer.* Inherently, they determine the reasonable needs of the children and the reasonable living expenses of the parent. This determination is developed from the Income Shares Model used in their creation. Thus the findings and calculations required by Melzer are no longer necessary in cases that fall within the guidelines.

In cases where evidence is presented that establishes a particular need of the child that warrants additional financial support, or where a need of the non-custodial parent beyond normal living expenses is present, a court may depart from the guideline amount. In those cases, the court must make a specific finding setting forth the factors that warrant departure, or the reason why the suggested departure is not warranted.

In the case before us, I would remand for the entry of the guideline amount. I cannot assume, as do some of my colleagues, that the needs of these children are being met by the award entered by the trial court simply because the custodial family is destitute. Rather, I believe that the guideline amount would help provide additional benefits for

these children, exactly what the guidelines were intended to accomplish.

Therefore, to the extent that there are cases which view the application of *Melzer* as still viable in guideline cases, they should be expressly overruled. Trial courts should apply the guideline amount, departing only where it is determined that particular needs of a child require a greater award, or where particular needs of the non-custodial parent limits the ability to meet the guideline amount. The language in the comment accompanying Pa.Rule of Civil Procedure 1910.16–1 at B(1) is particularly enlightening. "A party will not be rewarded for making unnecessary expenditures for his or her own benefit by having his or her support obligation reduced. Neither will a party be penalized for living frugally by receiving less support."

Therefore, I would remand this case to the trial court with directions to impose an award based on the application of the guidelines.

BECK, Judge, concurring:

At issue here is whether the trial court acted properly by awarding child support significantly lower than the presumptive guidelines figure. In view of the function of the guidelines and their underlying rationale, I find the trial court's deviation from the guidelines amount unjustified. Although I agree with the majority that the child support order entered here must be reversed and the case remanded for a redetermination of support, my reasons differ substantially from those of the majority.

The majority holds that child support cases which fall within the guidelines can be decided under a variety of approaches, including the *Melzer* formula, and that the "traditional broad discretion in the trial court to determine these matters remains unrestricted." The majority's view represents a serious and detrimental retreat from the enlightened guidelines approach to child support determinations. The guidelines were an intelligent response to the indisputable crisis for our nation's children. Broad reform

for child support was critically needed. Use of the guidelines promises fairness, uniformity and clarity coupled with flexibility. The majority's opinion would retain the old support determining system, but add the guidelines as yet another tool. The majority's opinion keeps in place an antiquated system which has proved to be unfair to the children it is intended to assist.

Before elaborating on the central considerations regarding the child support guidelines, I believe a more complete statement of the facts which give rise to the instant appeal is important. Appellant Teresa Ball ("wife") and appellee Thomas Minnick ("husband") separated in 1980 and have been divorced for approximately four years. They have two children, ages 15 and 10, who reside with wife. Both parties are remarried. Wife has a child from her second marriage. She, her new husband, their child and the children of the former marriage all live together. Husband's present wife has two children from a previous marriage for whom she has not sought and does not receive child support.

Numerous child support awards have been ordered and modified since the parties separated in 1980. This appeal stems from a petition for modification which was filed by wife in October, 1989. A domestic relations hearing officer recommended that child support in the amount of $500.00 per month be paid by husband to wife. This figure approximated the guidelines amount which is $513.00 per month based on the incomes of the parties. Husband sought a hearing de novo before the trial court, claiming that the recommended amount was excessive. A hearing was held on March 6, 1990. Wife and husband testified. Thereafter, the trial court entered an order for child support in the amount of $400.00 per month. It is from this order that wife appeals.

The testimony at the hearing went solely towards establishing the income of the parties and the estimated expenditures of each household. Wife's earning capacity was stipulated to be at the minimum wage and the parties agreed

that her income potential was $400.00 per month. Wife is a waitress who was, at the time of the hearing, unable to work due to recent surgery. She testified that although she regularly worked twenty hours a week, she wanted to work increased hours but that her employer could not guarantee her more work.

Wife testified that her present spouse was unemployed, was looking for work but was unable to drive. Therefore, he was dependent on her to drive him around in search of employment. Wife further testified that she and her family depended on food stamps to supplement her monthly income and also received state assistance in paying their heating costs. Wife enumerated her approximate monthly expenditures, which totalled about $850.00 per month for five people. This figure did not include expenditures for food which were covered by food stamps nor did it include the energy assistance the family was receiving.[1]

At the hearing it was concluded that husband's income was about $1700.00 per month. His present wife recently began working as a nurses' aide to help cover household expenses. Husband's monthly expenses, although spent on a household smaller than wife's, were almost double wife's monthly budget. Husband did not testify to any extraordinary obligations or unusual or special needs and the trial court made no findings regarding a particular disability by husband to pay the guidelines level of support.

In its opinion in support of the $400.00 per month child support it ordered, the trial court explained its reasoning as follows:

1. The entire extent of wife's testimony regarding monthly household expenditures was as follows: rent—$200.00; electricity—$58.00; car insurance—$181.00; gas—$100.00; food (over and above her $138.00 food stamp allotment)—$200.00; medical insurance—$40.00; heating (over and above unspecified energy assistance)—$75.00. Notably, these figures do not include *any* expenditures for telephone, clothing, dental care, school-related purchases, or medicine, all of which are basic, recurrent needs. The trial court expressed surprise that wife's monthly budget "would be so low." Unfortunately, the trial court then used this bare-bones, subsistence-level monthly figure to justify a reduction in the amount of child support to which the children were presumptively entitled under the statewide guidelines.

The total monthly budget of [wife's] household is $850.00 per month. The parties' children constitute forty per cent of that household, and the sum of $340.00 per month reflects their reasonable needs. The Court has concluded that the reasonable needs of the children are about $400.00 per month.

. . . . .

This Court is aware that the guidelines are a starting point only. The Court has considered the expenses of both parties and their standard of living. It is clear that an Order of $400.00 per month meets all the basic needs of the children, so that that any contribution made by [wife] will serve to enhance the standard of living of the children. The Court believes that an award in the guideline amount would require this [husband] to pay 60% of the expenses of [wife's] household, and thus subsidize [wife's] current husband and their child.

The trial court's opinion does not reflect an understanding of the guidelines scheme. The guidelines approach assumes that an average family with a specified income spends a certain amount for child support. Therefore, the guidelines formula adds the mother's and father's income and uses that figure as the sole basis for the support determination. The precise expenditures of the mother's and father's households are not relevant since the guidelines have built into the formula hypothetical expenditures that an average family consisting of a certain number of children would spend. In the instant case, the fact that under the guidelines the father's expenditures for a household smaller than the mother's was greater than hers would not mean that the father would pay less support. Nor under the guidelines would the fact that the mother lives more frugally and has fewer expenses penalize her by an award for a lesser amount. Since average child expenditures are built into the formula, the judge can determine the proper range of support by reference to the parties' incomes alone.

The commentary to the Pennsylvania rules which establish the guidelines recognizes this principle and emphasizes it as follows.

The guidelines make the support of a child a primary obligation. They assume that parties with similar net incomes will have similar reasonable and necessary expenses. After the basic needs of the parents have been met, the child's needs shall receive priority. A party will not be rewarded for making unnecessary expenditures for his or her own benefit by having his or her support obligation reduced. Neither will a party be penalized for living frugally by receiving less support. *In most cases, the parties' living expenses are not relevant in determining that party's support obligations because a support obligation is not based upon the amount of money the parties are actually spending on themselves and their children.* Rather, as the statute requires, the obligation is based upon the reasonable needs of a dependent spouse or child and the reasonable ability of the obligor to pay.

Pa.R.C.P. 1910.16.1, Explanatory Comment—1989, (B)(1) (emphasis added).

The guidelines represent a radical shift in the way support determinations are made. An understanding of this requires a discussion of the theoretical and historical roots of the child support guidelines, their goals and their proper application. The movement toward uniform state guidelines represents a significant departure, as well as an advance, in family law. Therefore, although the majority's recitation of the history of support matters is elucidating and no doubt accurate, it fails to take into account the bright signal for fundamental change which the guidelines manifest.

The impetus behind the nationwide enactment of child support guidelines is well-known but bears emphasizing here. An economic crisis of almost overwhelming scope faces the women and children of this country who comprise

270

female-headed, single-parent families.[2]  The number of such families living in poverty grossly exceeds the national average.[3]  Moreover, the rate at which women and children are descending into poverty is so severe that studies have predicted that, unless the present trend is slowed or reversed, nearly all Americans living in poverty in the year 2000 will be women and children in single-parent families.[4] Finally, the impoverishment of this segment of the population represents a problem of immense dimension for the entire nation, for it is estimated that one-half of the children in the United States will spend a portion of their childhood living in a single-parent home.[5]

Inadequate, unenforced and inequitable child support awards have contributed significantly to the crisis of poverty which confronts single-parent families.[6]  Many custodial

2. In the vast majority of divorce cases, women receive custody of the children.  Various studies conclude that roughly between 80–90% of custodial parents are women.  *See* Goldfarb, *What Every Lawyer Should Know about Child Support Guidelines,* 13 F.L.R. 3031 (1987) *citing* Bureau of the Census, U.S. Dep't of Commerce, *Household and Family Characteristics: March 1985,* Current Population Reports, Series P-20, No. 411, at 11, Table G (1986);  J. Wallerstein & J. Kelly, *Surviving the Breakup: How Children and Parents Cope with Divorce* 121 (1980);  Weitzman & Dixon, *Child Custody Awards: Legal Standards and Empirical Patterns for Child Custody, Support and Visitation After Divorce,* 12 U.C.D.L.Rev. 473, 502–503 (1979).  Thus it appears that "single-parent family" is almost always synonymous with "female-headed, single-parent family".

3. See Billings, *From Guesswork to Guidelines—The Adoption of Uniform Child Support Guidelines in Utah,* 4 Utah L.Rev. 859, 867 (1989), citing Bureau of the Census, U.S. Dep't of Commerce, Money Income and Poverty Status Of Families and Persons in the United States: 1985, ser. P-60, no. 154, at 4, 6 (1986).

4. National Advisory Council on Economic Opportunity, *Critical Choices for the '80s* 1 (1980).

5. *See* Goldfarb, *Child Support Guidelines: A Model for Fair Allocation of Child Care, Medical, and Educational Expenses,* 21 Fam.L.Q. 325, 349 (Fall 1987), *citing* H.R.Rep. No. 527, 98th Cong., 1st Sess. 30 (1983).

6. Of course, additional factors also add to the economic woes of single-parent families, such as the discrepancy between the earning power of women and men, the lost earning potential inherent in the custody of minor children, and the increased but often hidden costs of child-rearing in single-parent households.  *See,* McLindon, *The Economic Disaster of Divorce for Women,* 21 Fam.L.Q. 351, 396 (Fall

parents have never been awarded child support. Others have been unable to collect the awards ordered. Finally, the awards, even if paid, often have been far too low to approach even poverty-level subsistence standards, much less the true cost of reasonable child-rearing.[7]

In addition to the inadequacy of child support awards, the inconsistency of such awards drew criticism. Often the existence or the amount of a child support order depended upon the individual and diverse attitudes of the judges before whom the cases were heard. These disparities engendered perceptions of unpredictability and unfair treatment of children whose parents were divorced. Finally, because courts and the parties had little guidance in setting and predicting the levels of awards, the efficiency of the court process was undermined and settlements were made more difficult.

As a partial response to these problems, Congress initially enacted the federal Child Support Enforcement Amendments of 1984[8] which required each state to adopt child support guidelines based on "specific descriptive and numeric criteria and [which would] result in a computation of the support obligation." Four years later, the federal Fami-

1987) *citing* Fineman, *Implementing Equality: Ideology, Contradiction and Social Change,* Wisc.L.Rev. 789, 830 (1983).

7. One commentator noted:
   According to recently released Census Bureau statistics, the average amount of court-ordered child support due in 1985 was only $2390 per year, or $199 per month. These meager awards covered an average of 1.7 million children. Average child support orders are inadequate to raise children even at the poverty level and amount to only a quarter of the average expenditures on children in a middle-class household.
   Goldfarb, *What Every Lawyer Should Know About Child Support Guidelines, supra* note 3, at 1301 (footnotes omitted); *see also* Williams, *Guidelines for Setting Levels of Child Support Orders,* 21 Fam.L.Q. 281, 283–284 (Fall 1987); Billings, *From Guesswork to Guidelines—The Adoption of Uniform Child Support Guidelines in Utah, supra* note 4, at 863–869.

8. Child Support Enforcement Amendments of 1984, PL 98–378, 98 Stat. 1305 (codified at 42 U.S.C. § 667 (Supp.V.1987)).

ly Support Act of 1988 [9] required that states' guidelines operate as a rebuttable presumption beginning in October 1989.

Pennsylvania Rule of Civil Procedure 1910.16–1 et seq. represents this Commonwealth's compliance with federal law regarding child support guidelines. The rule creates a rebuttable presumption regarding what constitutes an appropriate level of child support based on the combined net incomes of both parties. The guidelines provide the parties in usual circumstances with an exact figure of the amount of support. This preciseness will enable many parties to settle their differences and arrive at an agreed support amount without intervention of the courts.[10] However, the guidelines also provide a mechanism to deviate from the indicated amount. Where flexibility is required the trial court may permit such deviation upon a specific finding that the guideline amount would be "unjust or inappropriate." Pa.R.C.P. 1910.16–1(b). This permissive deviation provides judges with the necessary flexibility to assure that the award of support is fair.

The child support guidelines adopted by this Commonwealth are based upon the Income Shares Model developed by the Child Support Guidelines Project of the National Center for State Courts.[11] The income shares model has as

9. Family Support Act of 1988, PL 100–485, 102 Stat. 2343 (codified at 42 U.S.C.A. §§ 651–669 (Supp.1989)).

10. One of the considerations in devising social policy is the transactional cost of that policy. The guidelines represent social policy which, if followed, will reduce transactional costs substantially. If the parties know with some certainty the outcome of their case, they will more likely settle than have the matter resolved in the courts; thereby saving legal fees, court costs, and judicial resources. The instant case represents a matter where both parties have meager resources. One can speculate that a strict policy of adherence to the guidelines would have permitted the parties to direct their financial resources to better use than litigation.

11. *See* Pa.R.C.P. 1910.16–1, Explanatory Comment—1989, Introduction Part A. This approach has also been adopted by the Family Law Section of the American Bar Association. *See Report to the House of Delegates on Child Support,* 1986 A.B.A.Sec.Fam.L.Rep. 1. This method is not the only existing model for establishing support guidelines. In fact, a state-by-state study of the varying approaches to support

its fundamental precept that, following a divorce, children should receive the same proportion or "share" of parental income that would have been received had the household remained intact.[12]  This model is consistent with a recurring but difficult to achieve objective in family law which is to insulate children, wherever possible, from the negative economic impact of divorce.[13]

The income shares model operates as follows.  The income of the two parents is determined and then combined.[14]  This figure is then used to calculate a basic child support obligation.  These guideline figure calculations are based on extensive economic studies which establish the estimated average expenditures on children in a two-parent family living in one household.  The cost of supporting children reflected in the computations has been determined by studying families of varying size and at varying income levels.  The basic child support obligation then is a figure which represents the proportion of the combined parental income which parents living together in the same household ordinarily spend on their children.  The formula also flexibly permits adjustment to the basic child support obligation for special expenses or needs.  That amount is then divided between the parents in proportion to their respective net incomes.  Where, as here, the children reside with one parent, that custodial parent's share of the child support obligation is retained and presumed to be spent directly on the children.  The non-custodial parent's share is expressed

computations reveals an enormous assortment of formulas and methods.  *See Child Support Guidelines: A Compendium—March 1990,* National Center for State Courts.

**12.**  *See* Pa.R.C.P. 1910.16–1, Explanatory Comment—1989, which notes that: "[The Income Shares] Model is predicated on the concept that the child should receive the same proportion of parental income that he or she would have received if the parents lived together."

**13.**  *See Pharoah v. Lapes,* 391 Pa.Super. 585, 592, 571 A.2d 1070, 1074 n. 6 (1990); *Maurer v. Maurer,* 382 Pa.Super. 468, 475, 555 A.2d 1294, 1297 (1988).

**14.**  Our guidelines are based on net income figures and provide for permissible deductions in order to arrive at monthly net income.  Pa.R.C.P. 1910.16–5(b).

in terms of a monthly child support award payable to the custodial parent.[15]

At the heart of the economic principles underlying our guidelines is a move away from a case-by-case, expense-based approach to child support determinations and toward an income-based model. *See Blaisure v. Blaisure*, 395 Pa.Super. 473, 477, 577 A.2d 640, 642 n. 1 (1990) ("new guidelines assign a percentage of income, rather than a need determination, as the basis of the award"). This shift has been prompted by a number of problems inherent in an expense-based approach. First, as the comments to the guidelines observe, "[b]ecause household spending on behalf of children is intertwined with spending on behalf of adults for most expenditure categories, it is difficult to determine the proportion allocated to children in individual cases, even with exhaustive financial affidavits." Pa.R.C.P. 1910.16–1, Explanatory Comment—1989, Part A. A large portion of household expenditures fall into categories which do not lend themselves to reliable apportionment between adults and children. Moreover, in part because there are numerous hidden costs to child-rearing, parents regularly underestimate the amounts they spend on their children.[16]

In addition, expense-based calculations of child support unnecessarily engage judges and litigants in controversies involving subjective judgments about what constitutes a reasonable expense either for the parent or the child. Experience has taught us that parties can easily control and even manipulate expenses and as a result child support determinations have often been inconsistent, arbitrary and inequitable.

The guidelines approach adopted by our Commonwealth was designed to eliminate the need to examine on a case-by-case basis the ordinary expenses of raising children. Be-

15. The guidelines provide for additional methods of calculation if the parties have divided or split custody of the children. These methods are not at issue here.

16. *See* Billings, *supra* note 4, at 890 citing L. Weitzman, *The Divorce Revolution: The Unexpected Social and Economic Consequences for Women and Children in America,* at 272 (1985).

cause the guidelines grid and formula are based upon what an ordinary family spends to raise a child, ordinary expenses have already been taken into account. The quantitative computations already reflect a judgment regarding the reasonable needs of children in order to maintain minimal standards of well-being. It is clear from this discussion and also for reasons of practicality, consistency and predictability, that cases which fall within the income-level limits of the guidelines [17] are to be decided by the guidelines grid or formula, and not from previous need-based case law formulas.

Where a case falls within the guidelines, I conclude that the guidelines were intended to replace the *Melzer* formula which has as its basis the calculation of the "reasonable needs" of the child in each discrete case. The majority which continues the viability of the *Melzer* formula has done a disservice to families whose income falls within the guidelines. It has needlessly complicated the support calculation. It has weakened if not erased the remedial purpose of the guidelines and returned us to a situation when child support awards were formulated haphazardly with concomitantly inequitable results.

The guidelines seek to promote predictability, uniformity, and most importantly, adequate levels of support. The majority is in error when it argues that to give the guidelines strong presumptive weight would somehow encourage the formulation of unjustifiably high awards upon which the obligee could not "collect". The majority identifies the cause of the impoverishment of children as the failure of the support enforcement system. The majority asserts, without support, that "[a]t least one-half of the problem [of the impoverishment of women and children] lies with the collection process rather than the Order of support itself."

17. The guidelines grid and/or formula only applies to those parties whose incomes fall within a certain range. As the guidelines themselves provide, parties whose joint monthly income exceeds $8,000 must have their child support obligation determined on the basis of existing case law rather than the guidelines computations. Pa.R.C.P. 1910.16–5(d). This exception does not apply to the instant case.

While the enforcement system has been defective, research has shown that the cause of the impoverishment of children lies more squarely in the inequity of support orders and only partially in the failure of the enforcement system. (See footnote 7.) A recent study in exploring the reasons for impoverishment of children finds that the "adequacy gap" exceeded the "compliance gap" several fold.[18] The Advisory Panel on Child Support Guidelines[19], which prepared the seminal report to the United States Office of Child Support Enforcement under the auspices of the National Center for State Courts, supports this conclusion and states "the inadequacy of child support awards is a much more serious issue than was previously understood."

It is important to note that the drafters of the guidelines did not view them as static. The exhaustive economic studies which resulted in the present guidelines will continue and the guidelines will be subject to revision and rethinking. Built into the guidelines is the concept of restudy and reevaluation. Presumably, should a time come when guidelines amounts overcompensated custodial parents and the children in their care, corrective measures would be taken to form a more equitable scheme.

Turning to the instant case with these principles in mind, it is clear that the trial court impermissibly deviated from the presumptive guidelines. The trial court employed the expense-based method the guidelines were meant to eliminate.

The trial court concluded that the "reasonable needs of the children" are about $400.00 per month. This conclusion is not borne out by the record. More importantly, in a

18. *Robert G. Williams, Development of Guidelines for Child Support Orders: Advisory Panel Recommendations and Final Report,* Part I, National Center for State Courts, 1987, at I–6.

19. This advisory panel was established by the U.S. Office of Child Support Enforcement in early 1984 at the request of the House Ways and Means Committee. It consisted of officials from the judicial, legislative, and executive branches of government as well as representatives of custodial and non-custodial parents, a legal scholar and an economist.

guidelines case, the needs of the children have already been calculated into the formula and a needs or expense analysis is therefore irrelevant. The court also considered other irrelevant factors. Explicit in the court's deviation from the guidelines is its concept that were father required to pay the full guidelines support amount he would be "subsidizing" appellant's new family. Under the guidelines father's obligation is based on what would have been spent on the children had the marriage not dissolved. The guidelines attempt, insofar as is possible, to approximate the standard of living the children would have enjoyed had the family stayed together. Father would therefore merely be paying his share, in the same proportion as his income compares to appellant's, of the costs of raising his children. The fact that father's child support obligation may indirectly impact on the standard of living of the people with whom his children now share a home does not provide a basis for depriving the children of their requisite share of support from him. If such support overburdened the father or was unnecessary for the support of the children then deviation from the guidelines should be considered. *See* Pa.R.C.P. 1910.16–1, Explanatory Comment—1989, (B)(3), Allowable Deviations. Clearly, no matter how comprehensive a guidelines scheme attempts to be, it cannot embrace every circumstance. Special expenses or special needs might well justify departures from the guidelines. The record here, however, reveals nothing which would warrant a departure from the guidelines.

Furthermore, I appreciate that for the father in this case, payment of the guidelines level of child support would represent a significant financial burden. Neither party to this dispute has adequate economic resources. But the policy of our law is clear—children are the first priority. Whenever possible, children of a divorced family are not to be impoverished as a result of the family dissolution. Absent special circumstances, I conclude that appellee must provide support for his children proportionate to his income and in line with the presumptive guidelines amount. There-

fore, I find the court in error. The judge considered irrelevant factors in order to deviate from the guidelines. I would remand to the trial court for reconsideration of the support amount in accordance with the guidelines.

This court must decide whether the antiquated system for determining child support should be retained. The majority's opinion would retain the system despite the fact that it directly conflicts with the policy of our state and nation, and continues a support determining system which has proven to be systematically unfair for the children of divorce.

While I too would reverse the order of child support, I cannot support my colleagues' rationale and the regrettable direction it portends.

WIEAND, Judge, dissenting:

I agree with both the lead and concurring opinions (both of which articulately state the views of their authors) that neither the support guidelines nor the formula propounded in *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984), are guaranteed to achieve a fair and just child support order in all cases. Therefore, a certain amount of discretion must necessarily remain in the trial judge whose responsibility it is to enter an order which is fair and reasonable under the circumstances. Any suggested formula or grid must, of necessity, be applied with a certain amount of common sense if, as I believe, justice among the children and their parents is our goal.

On appeal, therefore, a reviewing court must continue to apply an abuse of discretion standard. A support order entered by a trial court will not be reversed unless the court entering the order has in some way abused its discretion. See: *Melzer v. Witsberger, supra,* 505 Pa. at 475 n. 8, 480 A.2d at 997 n. 8; *Szillery v. Wheaton,* 382 Pa.Super. 394, 397, 555 A.2d 237, 238–239 (1989), quoting *Shutter v. Reilly,* 372 Pa.Super. 251, 256, 539 A.2d 424, 426 (1988). An abuse of discretion has been defined as follows:

"An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden

or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record, discretion is abused."

*Melzer v. Witsberger, supra* 505 Pa. at 475 n. 8, 480 A.2d at 997 n. 8. See also: *Caplan v. Caplan,* 400 Pa.Super. 352, 355, 583 A.2d 823, 824 (1990); *Pharoah v. Lapes,* 391 Pa.Super. 585, 589–590, 571 A.2d 1070, 1072–1073 (1990).

More recently, in *Commonwealth v. Powell,* 527 Pa. 288, 590 A.2d 1240 (1991), the Supreme Court adopted a definition for "abuse of discretion" as follows:

"Abuse of discretion" is synonymous with a failure to exercise a sound, reasonable, and legal discretion. It is a strict legal term indicating that [an] appellate court is of [the] opinion that there was commission of an error of law by the trial court. It does not imply intentional wrong or bad faith, or misconduct, nor any reflection on the judge but means the clearly erroneous conclusion and judgment—one [that is] clearly against logic and effect of such facts as are presented in support of the application or against the reasonable and probable deductions to be drawn from the facts disclosed upon the hearing; an improvident exercise of discretion; an error of law.

*Id.,* 527 Pa. at 297 n. 8, 590 A.2d at 1244 n. 8, quoting Black's Law Dictionary, 5th ed. (1979). In my judgment this is a more meaningful approach to determining whether an abuse of discretion has been committed.

In determining whether there has been a judicial abuse of discretion, it must be remembered that support claims are presented, heard and decided in adverse proceedings. This means that, by and large, the facts upon which a court's decision must be based are those presented by the parties. On those facts, with the assistance of support guidelines adopted by the Supreme Court, a decision must be made.

The support guidelines are presumptively correct, see: Pa.R.C.P. 1910.16–1(b), and when applied will, in many cases, produce a fair result. However, they are a starting point only, and a trial court must have discretion to deviate

from the guidelines when the facts warrant it. See: Pa. R.C.P. 1910.16–5. In the instant case, I am unable to agree that the order entered by the trial court, based as it was on the facts presented by the parties, constituted an abuse of judicial discretion. Therefore, I would affirm the order of the trial court.

JOHNSON, Judge, dissenting:

I join the Dissenting Opinion by my colleague, Judge Wieand, in its entirety. I do this on my understanding that Judge Wieand believes that the support guidelines are the proper vehicle for evaluation of an appropriate amount of support, given the facts of this case. I also agree with Judge Wieand that the order entered by the Honorable John E. Blahovec has not been shown to have been the result of any abuse of discretion.

We had accepted this appeal for *en banc* consideration on two separate occasions. The single reason for granting *en banc* review was to resolve this question: Do the new statewide guidelines for support supercede the formula set forth in *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984) for calculating support payments when the parents' income falls within the guidelines income-levels?

I feel compelled to comment briefly because of my concern regarding the basis for arriving at the answer to the question posed to this intermediate appellate court. While my colleague Judge Beck would appear to reach the same answer as myself to the question concerning the primacy of the guidelines, she does so only after a "discussion of the theoretical and historical roots of the child support guidelines, their goals and their proper application." Opinion, Beck, J., pages 1194–1195, 1195–1198. By the same token, my colleague, Judge Tamilia, relies upon "a brief historical review of the caselaw and statutory law in Pennsylvania" in reaching the opposite result. Opinion, Tamilia, J., pages 1184–1189. I am not prepared to dispute the accuracy or depth of either analysis. However, I would find the answer

to be found much closer to home than the approach of either of my colleagues.

It is enough, for me, that the Supreme Court enjoys the broadest possible power to prescribe and modify general rules governing practice, procedure and the conduct of all courts. Pa. Const. of 1968, art. V, § 10(c); 42 Pa.C.S. § 1722. This power would exist with or without enactment by the legislature of Act 81 of 1989, Act of December 20, 1989, P.L. 654, § 1, 23 Pa.C.S. § 4322(a).

Because of this general rule making power lodged in, and only in, our Supreme Court, I believe it inappropriate for this court to consider either legislative intent or "a century of judicial interpretation of support law" in considering whether or not the rules are applicable. Opinion, Tamilia, J., page 1189. I find no ambiguity in those sections of the support guidelines dealing with their applicability, notably §§ 1910.16–1 and 1910.16–5. I therefore must conclude that the role of the Superior Court on this issue is to maintain and effectuate those guidelines as faithfully as possible, without going outside the rules to find support for their implementation. *Compare, Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985).

I read Judge Blahovec's Findings of Fact, and Order of Court dated March 9, 1990 as being in compliance with the guidelines. I therefore would affirm the support order, and I join Judge WIEAND's Dissenting Opinion that would do exactly that.