576 A.2d 1100

**Joyce BEEGLE, Appellee,**

**v.**

**Frank RASLER, Appellant.**

Superior Court of Pennsylvania.

Argued March 21, 1990.

Filed June 19, 1990.

Frederick B. Gieg, Jr., Altoona, for appellant.

Benjamin H. Claar, Jr., Hollidaysburg, for appellee.

Before CAVANAUGH, DEL SOLE and HUDOCK, JJ.

**DEL SOLE, Judge:**

Appellant, Frank Rassler, appeals a support order entered as a result of an action filed by, Appellee, Joyce Beegle on behalf of her son. Because of errors in the proceedings before the trial court and the court's analysis of the matter before it, we reverse and remand the case to the trial court for further proceedings.

We find it necessary to begin by commenting on the procedural path this case has taken. The matter was commenced as a support action. Appellant initially disputed paternity, but, after blood testing was completed, paternity was acknowledged. In Appellee's Statement of the Facts which appears in her Brief, she recounts that the next event to take place was a hearing held on May 12, 1989 before a hearing officer. No transcript or notations concerning this hearing appear in the record or on the docketing statement. In fact, there is nothing in the record which would confirm that such a hearing was held. The docket only makes reference to an order dated June 29, 1989. That order indicates that a hearing was scheduled for June 29, 1989 relative to Appellee's Complaint for Support. The court fixed an amount of support but first gave some indication of the events which transpired that day. It stated that its order was entered "after hearing argument on the matter on today's date in which the Petitioner has appeared with legal counsel, and the Defendant has appeared through his legal counsel, but has been absent himself from the Courtroom, which this Court does not hold against the Respondent, based on the information presented." Thus, it appears that despite the fact that a hearing was scheduled one was not held; only argument was heard. Within 30 days of the court's June 29th order, Appellant filed his appeal. Also filed by Appellant was a Petition for Evidentiary Hearing. The Petition requests that a hearing be held "not for purposes of setting aside the Order" but "only for purposes of establishing a record so that an Appellate Court will have all the facts under oath with regard to the circumstances in this case." This unusual

request was granted by the court and such a hearing was held, but the trial court properly questioned its authority to take such action. At the start of the hearing the court remarked:

This Court in chambers met with counsel earlier today to ask if prior to this proceeding what authority this Evidentiary hearing was to be conducted. There is no authority cited to this Court, however, it has been the standard custom and practice in this jurisdiction to allow an Evidentiary Hearing after an Order has been entered. This Court has serious question about that procedure, and if this case continues through Appeal, well I guess it is on Appeal, this Court would ask the Superior Court to Direct comments toward the procedure employed herein.

N.T. August 22, 1989 at 5–6.

■ The trial court had just reason to doubt the propriety of conducting an evidentiary hearing after entry of the final order and subsequent to the filing of an appeal. In requesting the evidentiary hearing Appellant was not seeking to have the court reconsider its order; Appellant only wanted to have a record which the Superior Court could review. This procedure is improper and if it is, as the trial court stated, the standard custom in Blair County to conduct such hearings, this practice must change. Rule 1701(a) of the Appellate Rules directs that "as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter." Pa.R. A.P. 1701(a), 42 Pa.C.S.A. The trial court had no authority to conduct an evidentiary hearing, without expressly granting reconsideration, once the appeal had been filed. The purpose of a record is to enable the appellate court to review what transpired at the trial level which caused the trial court to enter its order. This record cannot be compiled after the fact.

The Rules of Civil Procedure specify the procedure to be utilized in support matters. Rule 1910.10 refers to two alternative hearing procedures, those described in Pa.R.C.P.

1910.11 and 1910.12.. Neither procedure was followed in the instant case. Because it is necessary to remand this matter to the trial court, we direct that the court employ the appropriate hearing procedure detailed in the Rules of Civil Procedure.

▮ The remand is necessary based upon the court's use of an earning potential figure to represent Appellant's income and upon Appellee's failure to specifically identify those monthly expenses which were incurred by the child. The trial court's utilization of these figures to calculate its award was error and upon remand must be corrected.

We will first address the issue of Appellant's income. The parties do not dispute some of the basic facts of this case.

The parties met and their child was conceived while they were working at Mercy Hospital in Altoona, Pennsylvania. Appellant, Rasler was employed as an emergency room doctor and Appellee Beegle was employed full-time as a registered nurse. The parties had not married but after the birth of the child Dr. Rasler moved to Atlanta, Georgia and Ms. Beegle married another individual. Dr. Rasler was again employed as an emergency room physician and Ms. Beegle continued her employment with Mercy Hospital but now only on a part-time basis. In April of 1989 Dr. Rasler, along with other doctors in his group, had his employment terminated. He then commenced part-time employment with various other hospitals and medical centers as an emergency room physician earning less than he previously had, and enrolled in a near-by university for a further degree.

▮ In analyzing this set of facts the trial court concluded that it should look to Dr. Rasler's earning capacity not his actual earnings. We conclude that this determination was in error. It is true that as a general rule the earning capacity, not the actual earnings, is the determinative factor in ascertaining the ability to pay support. *Akers v. Akers,* 373 Pa.Super. 1, 540 A.2d 269 (1988). This rule, however, is

not without exceptions, such as those situations where the income is reduced involuntarily through illness, layoff or some other factor over which the parent has no control. *Id.* Further the courts have recognized a parent's legitimate desire to forgo a lucrative present employment situation in the hope of establishing a rewarding future career. In *Commonwealth ex rel. McQuiddy v. McQuiddy*, 238 Pa.Super. 390, 358 A.2d 102 (1976) this court affirmed the decision of the trial court which stated in part:

It is to be hoped that the latent 'earning power' to be found in every young lawyer will emerge with the passage of time and will enure to the benefit of Respondent's minor children as well as to himself. That earning power should not be equated to the higher earnings which he might for the time being command as a salaried employee at the expense of abandonment of his professional career. We do not think that it is such a concept of earning power which we are to look for when we look beyond actual earnings in our search for ability to pay.

358 A.2d at 104–105.

In *Roberts v. Bockin*, 315 Pa.Super. 52, 461 A.2d 630 (1983), the court looked to the mother's actual earnings, not her income potential as demonstrated in the past, to measure her ability to support her child. The court recognized the courts' suspicion regarding any sudden income reductions since it has been held that a parent may not intentionally reduce his or her earnings and then use the reduction to obtain a decree in the amount of child support. In reaching its decision the court cited a passage from *Weiser v. Weiser*, 238 Pa.Super. 488, 492, 362 A.2d 287, 288–289 (1976) which it found applicable to both parents who have the equal responsibility to support their child.

[W]e are not constrained to say that a man once he has established a certain income level for himself and his family in the employ of another cannot decide to go into business for himself even though it results in a decrease of his present earnings. A man should have freedom of choice to be an employee of another or to establish his own business even though such change may result in

present financial sacrifice with the hope of future increased income.

*Roberts v. Bockin, supra,* 461 A.2d at 632.

In the present case, the trial court failed to recognize that Dr. Rasler did not voluntarily quit his full time position with the Atlanta hospital; he was dismissed along with other members of the hospital staff. *Contrast: Akers v. Akers, supra.* Dr. Rasler cannot be faulted for securing part-time employment at various other hospitals, still earning a substantial income, while deciding to pursue a further education which may result in a future of increased income. Contrary to Ms. Beegle suggestion, Dr. Rasler cannot be expected to relocate anywhere in the country to secure a position which pays the equivalent of that which he earned in his full-time position in Atlanta. Since there is no indication or allegation that Dr. Rasler deliberately left his job in an effort to reduce his income, we conclude that the court erred in refusing to look to his actual earnings to measure his ability to pay support.

█ We also find that the court's decision in this matter was based on an incomplete record of the child's reasonable needs. Although Ms. Beegle submitted to the court an itemized expense sheet, no separate calculations were made to identify the expenses incurred by the child. Ms. Beegle listed for the court the rent utilities, insurance, automobile and clothing costs for her entire household of three. She then divided this number by one-third to determine the expenses incurred each month by the child. We believe more specific calculations must be made. The child's clothing costs may not amount to one-third of the family's total cost. Likewise the cost of housing for a family of three may not be one-third greater than housing for a two person household. Upon remand it is incumbent upon Ms. Beegle to specifically identify the child's monthly expenses.

Order reversed case remanded to the trial court for proceedings consistent with this opinion.

CAVANAUGH, J., files a concurring and dissenting opinion.

CAVANAUGH, Judge, concurring and dissenting:

I agree with the majority that remand is required for calculation of the reasonable needs of the parties' child. The record as developed in the lower court does not adequately demonstrate the expenses necessary to support a two-year old living with his mother and step-father.

I disagree with the majority's conclusion that appellant's current earnings rather than his earning capacity should form the basis of his ability to contribute towards the support of his son. The majority relies upon appellant's pursuing further education for its finding that part-time employment is justified. Appellant has failed to show how his financial status as a medical doctor would be enhanced through his attainment of an academic degree in public health. Although the pursuit of this degree may be intellectually stimulating and the practice of medicine in the area of public health socially admirable, appellant has offered no evidence to support a claim that his current reduction in income is justified on the basis of a potential increase in income.

As noted by the majority, the general rule is that earning capacity, and not actual earnings, determines ability to pay support. *Akers v. Akers*, 373 Pa.Super. 1, 540 A.2d 269 (1988). This case presents no exception, despite appellant's termination from his initial employment in Atlanta, since he explains his current part-time status in multiple hospitals as due to his furtherance of his education. The missing link, however, is that appellant has presented no evidence that would support the majority's counter-intuitive argument that a career in public health is likely to be more financially rewarding than one as an emergency room doctor. For this reason I dissent from that part of the majority opinion which requires the trial court to consider actual earnings rather than earning capacity.