J-S63029-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| RALPH A. FERRIS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MARYANN PETRI | |
| Appellant | No. 406 WDA 2017 |

Appeal from the Order Entered March 6, 2017
In the Court of Common Pleas of Erie County
Domestic Relations at No(s): 839115257

BEFORE: BOWES, J., SOLANO, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SOLANO, J.:                    FILED DECEMBER 27, 2017

Maryann Petri ("Mother") appeals, pro se, from the court's March 6, 2017 order (dated March 2, 2017), maintaining her $789 monthly support obligation (plus arrears) to her three minor children, with a downward modification to $763.08 (plus arrears) to her two minor children after one child was emancipated on June 6, 2017.  We vacate and remand for further proceedings, as set forth below.

A year ago, this Court set forth the following procedural and factual history in resolving Mother's appeal from a September 4, 2015 order establishing her monthly support obligation at $789:

Mother and Ralph A. Ferris ("Father") married on June 18, 1994, separated during 2002, and divorced on December 31, 2004. The parties' three children were born during April 1998, March 2001, and July 2002 respectively. Mother and Father initially shared equal physical custody of the children, and during 2013, Mother, a registered nurse, obtained a child support award in the amount of $300 per month. The award was calculated using an assessed monthly earning capacity of $3,521.57 to

determine Mother's income for the purposes of the support guidelines.[1] While Mother disputed the court's determination of her earning capacity at every stage of those support proceedings, she did not appeal the trial court's final child support order.

The amicable custody arrangement between Mother and Father quickly deteriorated, and following an "indicated" report that Mother perpetrated emotional abuse against one of the children, Father obtained primary physical custody of the

_____

[1] This Court explained earning capacity as follows:

We define earning capacity as "that amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition and training." Gephart v. Gephart, 764 A.2d 613, 615 (Pa. Super. 2000) (citation omitted). Pursuant to Pa.R.C.P. 1910.16–2(d)(4), which permits the trial court to impute an income equal to a party's earning capacity, the trial court is directed to engage the following considerations:

Earning Capacity. Ordinarily, either party to a support action who willfully fails to obtain appropriate employment will be considered to have an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16–2(d)(4).

Ferris v. Petri, No. 1443 WDA 2015, 2016 WL 7103916, at *3 (Pa. Super., Dec. 6, 2016) ("Ferris I").

children during 2015. As Mother was limited to partial physical custody on alternating weekends, her support was terminated, and on April 24, 2015, Father filed the complaint for child support that is the genesis of this appeal.

Following a support conference, the trial court's domestic relations section entered an interim order [on July 17, 2015] awarding Father $789 per month in child support and $90 toward arrears.[2] While the parties agreed upon Father's net monthly income, which was documented by his federal tax return for 2014, Mother's earnings were again contested. Mother argued that she no longer had the earning capacity that was assessed in the former case because she lost her child abuse clearances under the Child Protective Services Law ("CPSL") as a consequence of the founded allegation of abuse and could not work in the positions that she previously held. Father countered that Mother's earning capacity was established in the prior proceeding and that the identical figure should be used in the present case. The domestic relations section agreed and assessed Mother a net earning capacity of $3,521.57 in light of the prior assessment and Mother's education and work experience.[3]

_____

[2] The explanatory comment to Rule 1910.11 explains the office conference procedure for a support action:

The domestic relations office conference provided by Rule 1910.11 constitutes the heart of the support procedure. There are two primary advantages to the inclusion of a conference. First, in many cases the parties will agree upon an amount of support and a final order will be prepared, to be entered by the court, thus dispensing with a judicial hearing. Second, those cases which do go to hearing can proceed more quickly because the necessary factual information has already been gathered by the conference officer.

Pa.R.Civ.P. 1910.11, Cmt. The office conference is conducted by a conference officer, who is a lawyer. Pa.R.Civ.P. 1910.11(a). The officer must recommend the amount of support. Pa.R.Civ.P. 1910.11(d)(1).

[3] The court's order imposed a monthly support payment of $789, plus an additional $90 to pay the then-outstanding arrears of $2,658.51. Interim Order, 7/17/15.

Mother demanded a de novo support trial, arguing that she had been unemployed for seven months due to the allegations of abuse and that she could only work one day per week as a result of related stress and mental health issues. Father's income was not in dispute. At the outset of the September 4, 2015 hearing, Father's attorney reminded the trial court of the prior support proceedings that the court presided over during 2013, in relation to Mother's support complaint. Father posited that Mother should be held to the same earning capacity that the court assessed at the close of the 2013 proceeding. The trial court stated that it understood the relevant issues and invited Mother to proffer testimony.

Mother testified that, prior to January 2015, she earned approximately $27 per hour as an emergency room nurse at St. Vincent Hospital. She worked four twelve-hour shifts per two-week pay period, i.e. twenty-four hours per week. In January 2015, the hospital suspended her without pay as a result of the indicated finding of abuse. She returned to work during July 2015, when the indicated finding was expunged from her record [on June 5, 2015,] and she was eligible to receive the required child abuse clearances.[FN] While she received a two-dollar per hour raise upon her return to work, she reduced her employment to one four-hour shift per week. Mother asserted that the reduction was due to her diagnoses of anxiety and depression. She attempted to verify her mental health conditions by introducing two physician verification forms that had been completed by her psychiatrist and her primary care physician; however, the trial court sustained Father's objection to the documents as untimely under Pa.R.C.P. 1910.29(b)(2) (party must serve the physician verification form no later than twenty days after the support conference).[4] After sustaining the objection, the court reiterated, "I also understand that these issues have been before the court significantly before." N.T., 9/4/15, at 11–12.[FN2] Following the hearing, the trial court sustained the [July 17, 2015] domestic relations section's award to Father of $789 per month child support (plus $90 toward

_____

4 These verification forms are not in the certified record. "Physician verification forms are specific documents whose form, use, and admissibility is governed by Pa.R.C.P. 1910.29. The documents are used in support cases to verify that a parent has a medical condition that affects his or her ability to earn income over a specific period of time." Ferris I, 2016 WL 7103916, at *4.

- 4 -

arrears) and entered that award as a final child support order [on September 4, 2015].

> [FN] Days after an administrative law judge expunged the agency's "indicated" finding of emotional abuse, Erie County Child and Youth Service issued a fresh "indicated" finding of abuse against Mother in relation to one of the other children. Mother's appeal from the latter determination was pending when the support hearing occurred. N.T., 9/4/15, at 3, 7-8, 12. Father avers in his brief that the second indicated report was also expunged. Father's brief at 5 n.4.

> [FN2] We observe that, to the extent that the trial court indicated that it heard evidence regarding Mother's mental health problems during the 2013 proceedings, the record does not support that finding. The current allegations of anxiety and depression did not arise until 2015, supposedly concomitant with the loss of shared physical custody of the children and the leveling of indicated reports that she perpetrated emotional abuse. Stated plainly, we do not rely on this aspect of the trial court's recollection of the 2013 proceedings.

Ferris v. Petri, No. 1443 WDA 2015, 2016 WL 7103916, at *1-*2 (Pa. Super., Dec. 6, 2016) (footnote omitted) ("Ferris I").

In sum, Mother was charged twice by the Erie County Office of Child and Youth Service ("OCY") with emotional abuse of her children. The first charge was expunged on June 5, 2015, N.T. 9/4/15, at 3; and the second apparently was expunged on December 4, 2015. Mother's Pa.R.A.P. 1925(b) Statement, 3/31/17.

Mother, pro se, appealed the court's September 4, 2015 order. She argued that the trial court erred by sustaining Father's objections to her physician verification forms. Ferris I, 2016 WL 7103916, at *4. Mother

also contended that the trial court abused its discretion by finding that she had an earning capacity that was unsupported by the record. Id. at *2.

On November 12, 2015, while Mother's appeal from the September 4, 2015 order was pending in this Court, Mother filed a petition for modification of her $789 support order. Mother's Pet. for Modification of an Existing Support Order, 11/12/15. The basis for her petition, which she verified, was her averment that she was no longer employed as of November 11, 2015. Id. at 2.

An office conference was held on January 6, 2016, at which, according to the officer, Mother "stated that she is no longer employed part-time" at Saint Vincent Hospital as of November 11, 2015. Summary of Trier of Fact, 1/13/16, at 2. The officer noted that Mother's earning capacity had been upheld by the trial court after a trial de novo, and that the trial court's order was then on appeal to this Court. Id. The officer recommended the following with respect to support: "All terms and[/]or conditions of the prior [September 4, 2015] Order shall continue ($789.00/month for the support of three minor children)." Id. The officer entered an interim order requiring payment of $884 per month, reflecting $789 per month in support and a slight increase to $95 per month for arrears. Interim Order, 1/13/16, at 2. Mother did not request a trial de novo following this decision.

On February 4, 2016, the docket reflects that Father filed a pro se petition for modification, but the record does not include this petition. That next day, the court entered two orders instructing the parties to appear for a

February 24, 2016 office conference. Orders, 2/5/16. At that conference, a summary by the trier of fact states that the reason for the conference was to resolve Mother's petition to suspend the support obligation. Summary of Trier of Fact, 2/25/16, at 1. The record and docket, however, do not reflect any such petition.

At the February 24, 2016 office conference, Mother again stated that she was terminated from her part time employment at Saint Vincent due to her inability to obtain mandatory child abuse clearances. She noted that the charge of child abuse was expunged and she had reapplied for her clearances. Mother stated that she had applied for jobs and tried to get back her old job with Saint Vincent. She also applied for Social Security disability benefits and was waiting for a hearing date. Mother insisted she did not have income available to pay the amount in the support order. Summary of Trier of Fact, 2/25/16, at 2.

The officer noted that Mother, prior to the conference, provided "updated medical documentation . . . which indicates [Mother] is unable to work at this time," but the officer pointed out that the documentation "lists the same conditions that were taken into consideration at the last De Novo Hearing" on September 4, 2015. Summary of Trier of Fact, 2/25/16, at 2.[5] According to the officer, Father agreed, arguing "that the medical

_____

[5] This documentation was not made part of the certified record. It is not clear if the documentation consists of the physician verification forms discussed in this memorandum.

- 7 -

documentation was already taken into consideration and that [Mother] should continue to be held to the current earning capability as she was terminated from employment for cause." Id. at 2-3.[6] The officer did not rule on the petition for modification and forwarded the matter to the trial court for "testimony as there is a pending appeal to" this Court. Id. at 3. The officer then scheduled a court hearing for March 31, 2016. Order for Court Hr'g, 2/26/16.

In apparent anticipation of the March 31, 2016 hearing, Mother, on March 8, 2016, filed a praecipe attaching physician verification forms as exhibits. These forms, signed by various physicians, identify Mother's medical ailments and work restrictions. Mother's Praecipe to Attach Exs., 3/8/16. Father filed an objection to Mother's praecipe and asked that any physician testimony be presented in person. See generally Pa.R.Civ.P. 1910.29(b)(2).[7]

_____

[6] We note, however, that the court had not considered Mother's medical documentation at the September 4, 2015 hearing, because the court had sustained Father's objection to its admission.

[7] This rule states:

> Record Proceeding. If the matter proceeds to a record hearing and the party wishes to introduce the completed Physician Verification Form into evidence, he or she must serve the form on the other party not later than 20 days after the conference. The other party may file and serve an objection to the introduction of the form within 10 days of the date of service. If an objection is made and the physician testifies, the trier of fact shall have the discretion to allocate the costs of the physician's testimony between the parties. If there is no objection, the form

(Footnote Continued Next Page)

On March 15, 2016, Mother filed a pro se motion asking that the trial judge recuse herself, venue be switched, and the conference officer be required to comply with Pa.R.Civ.P. 1910.11. Mother's Mot. to Comply with Pa. RCP and Change Venue, 3/15/16.[8] Mother contended that she lost her job on November 23, 2015. Mother recounted the procedural history and contended that the officer "unilaterally 'unfroze' the case, and scheduled a de novo hearing" before the trial court on March 31, 2016. Id. at ¶ 8. She maintained that the officer's action violated Rule 1910.11, which, in her

_____
(Footnote Continued) —————————————

> may be admitted into evidence without the testimony of the physician. In the event that the record hearing is held sooner than 30 days after the conference, the trier of fact may provide appropriate relief, such as granting a continuance to the objecting party.

Pa.R.Civ.P. 1910.29(b)(2).

[8] Rule 1910.11 sets forth the procedures for an office conference. Among other things, it provides:

> (e) At the conclusion of the conference or not later than 10 days after the conference, the conference officer shall prepare a conference summary and furnish copies to the court and to both parties. . . .
> . . .
> (f) If an agreement for support is not reached at the conference, the court, without hearing the parties, shall enter an interim order calculated in accordance with the guidelines and substantially in the form set forth in Rule 1910.27(e). Each party shall be provided, either in person at the time of the conference or by mail, with a copy of the interim order and written notice that any party may, within twenty days after the date of receipt or the date of the mailing of the interim order, whichever occurs first, file a written demand with the domestic relations section for a hearing before the court.

Pa.R.Civ.P. 1910.11(e)-(f).

- 9 -

view, required the officer to issue an interim order and conference summary and did not provide for a de novo court hearing unless one of the parties demanded a hearing. Id. Mother asserted that the officer had "no right to spend the parties' money for them on lawyers to attend a hearing. Further neither party offered or provided any testimony to be heard, and the entire thing reeks of impropriety." Id. For relief, Mother asked that the trial court order the conference officer to comply with Rule 1910.11, issue an interim order granting the relief requested in her motion, and transfer the case out of Erie County, as the trial court "seems to have overwhelming conflicts of interest." Id. at Ad Damnum Cl. ¶ 3.

On March 23, 2016, Mother filed yet another pro se motion to compel the Domestic Relations Section to comply with Rule 1910.11. Mother's Mot. to Compel Domestic Relations to Comply with Rule 1910.11, 3/23/16. She asserted that the conference officer "froze" the case at the January 6, 2016 hearing due to the then-pending appeal and argued that nothing in Rule 1910.11 authorized such a "freeze." Id. at 8. Mother stated that "Domestic Relations managed to thaw the case out and reschedule a new Conference" for February 24, 2016, but the conference officer at that hearing engaged in "a different method of abrogating her duty and violating procedure by unilaterally scheduling a de novo hearing directly in front" of the trial judge. Id. at ¶ 9. As in her March 16, 2016 pro se motion, Mother maintained that Rule 1910.11 required the conference officer to issue an interim order. Mother asserted that the trial judge in her custody case diagnosed her "with

- 10 -

mental illness so severe" she is incapable of caring for her children, and contrasted that conclusion with Father's position in the support matter that Mother is capable of being employed as a nurse. Id. at ¶¶ 13-14. As relief, Mother requested that the March 31, 2016 de novo hearing be canceled and a new conference officer be assigned.

Mother's counsel filed a petition to withdraw on March 30, 2016, which the court granted that same day.

On March 31, 2016, the trial court held a hearing on Father's objections to Mother's praecipe, as well as Mother's March 23, 2016 motion to compel the court to comply with Rule 1910.11. N.T., 3/31/16, at 2. The court also indicated "[t]his matter comes before the [c]ourt based . . . on a petition to suspend the order." Id. The court and the parties did not suggest that the court should entertain Mother's March 16, 2016 motion.

With respect to Father's objection to Mother's praecipe, Father's counsel reasoned that because "none of the information in there has changed since 2013, when this litigation really started, I filed the objection asking that [the physicians] be required to appear here today. I don't see any of them here to testify." N.T., 3/31/16, at 3. Father's counsel argued that the exhibits should be "inadmissible under the rule[9] at this point in time [and] ask[ed] the [c]ourt to not allow any testimony or any of the physician verification forms" that Mother provided.

_____

[9] Father's counsel did not cite a particular rule, but counsel appeared to reference Rule 1910.29(b)(2).

The court withheld a ruling on Mother's March 23, 2016 motion and Father's objection because of the then-outstanding appeal to this Court of the September 4, 2015 order. N.T., 3/31/16, at 10-11. The court memorialized its decision in an order dated April 1, 2016, but docketed on April 8, 2016. Order, 4/8/16 (holding that the court's "decision is held in abeyance pending directives from Superior Court decision").

On December 6, 2016, this Court affirmed the trial court's September 4, 2015 order establishing Mother's monthly support obligation at $789.[10] We affirmed the trial court's evidentiary ruling regarding the proffered physician forms regarding Mother's health, reasoning that Mother's failure to serve the forms on Father "denied him the opportunity to review the documents and level any substantive objections to their admission without the examining physicians' testimony." Ferris I, 2016 WL 7103916, at *4. With respect to Mother's earning capacity, we stated:

> [D]uring the evidentiary hearing, [Mother] testified that despite her training, experience, and ability to earn between $27 and $29 per hour, she elected to work twenty-four hours per week prior to her suspension during January 2015 and only four hours per week following her reinstatement. Hence, Mother's actual income is incongruous with her established earning capacity. Although Mother claimed that stress and mental health problems prevented her from working more than four hours per week, she did not introduce evidence to support her claim. Recall that the trial court sustained Father's objection to the two physician verification forms that Mother attempted to introduce and found her unsubstantiated testimony incredulous.

_____

[10] We also noted that the trial court erred by treating Mother's de novo appeal as a petition for modification. Ferris I, 2016 WL 7103916, at *3.

*Id.* Because the forms were not introduced, this Court deferred to the court's credibility determination regarding Mother's testimony about her stress and mental health issues, *id.* at *5, and concluded

> [T]he certified record reveals that upon considering Mother's earning history, current earnings, and the prevailing economic conditions, the trial court reasoned that Mother's earning capacity should more accurately reflect her earning potential rather than her actual income. As the trial court's rationale addressed the appropriate considerations enumerated in Rule 1910.16–2(d)(4) and was not the result of partiality or ill-will, we cannot find a basis to disturb its conclusion.

*Id.*[11]

On January 6, 2017, Mother, pro se, filed a "Motion to Schedule a Hearing to Rule on an Application for Wage Reduction." The motion is somewhat difficult to understand, but it appears Mother was requesting a support modification. The motion contended that she lost her job as a registered nurse at Saint Vincent Hospital due to the two indications of child

_____

[11] This Court also observed:

> In light of the fact that the initial allegation of abuse was expunged, we reject the trial court's rationale that Mother's unpaid suspension between January and July 2015 was tantamount to a voluntary reduction in employment. However, to the extent that Mother is terminated or endures another unpaid suspension based upon a substantiated allegation of abuse, we would agree with the trial court that those consequences would constitute a voluntary reduction in income under the guidelines. Absent these additional facts, however, our holding is based upon Mother's decision to reduce her work load to four hours per week notwithstanding her ability to secure the required CPSL clearances.

*Ferris I*, 2016 WL 7103916, at *5 n.5.

abuse. Mother's Mot. to Schedule a Hr'g on an Appl. for Wage Reduction, 1/6/17, at ¶ 3. She maintained that "there are no hospital jobs in her field that would make up her previous wage, nor hire her due to fears of the third child possibly [raising an indicated charge of abuse], and the indications and expungements conflicting with attaining nursing jobs." Id. She alleged that due to these false indications of abuse, she was unable to work "from January 20, 2015 to November 23rd, 2015." Id. Mother claimed that Saint Vincent "through physician order allowed Mother to work only four hours and only one day a week." Id. She also stated that she had started a minimum wage job on March 25, 2016. Id. She repeated her argument that the court erred in 2013 when it calculated her earning capacity. Id. Mother maintained that she is unable to work full-time because of her age, "health, mental and physical conditions." Id. at 11.[12]

On January 12, 2017, the Erie County Domestic Relations Section filed a petition for contempt against Mother for failure to pay. Pet. for Contempt, 1/12/17. The record does not reflect any ruling on this petition.

_____

[12] Mother also referenced separate litigation tangentially related to her support obligation. Mot. to Schedule a Hr'g on an Appl. for Wage Reduction, 1/6/17, at ¶¶ 1-2, 5-6. Mother unsuccessfully had sought to impose a constructive trust on Husband's undisclosed pension, which he failed to disclose in the parties' marital settlement agreement resolving the parties' divorce, but, on appeal, this Court vacated that decision and remanded for further proceedings to ascertain the value of the pension. Ferris v. Ferris, No. 514 WDA 2015, 2016 WL 800708, at *2-*3, *5 (Pa. Super., Mar. 1, 2016). It appears that, on remand, the court imposed a constructive trust on Husband's pension and ordered that Mother's marital share of that pension be applied to her then outstanding support arrears. Mot. to Schedule a Hr'g on an Appl. for Wage Reduction, 1/6/17, at ¶¶ 1-2, 5-6.

On January 20, 2017, the court scheduled a March 1, 2017 de novo hearing "due to . . . Judge Kelly's order dated 4/1/16 & Motion to schedule a hearing to rule o[n] an application for wage reduction." Order, 1/20/17. The record suggests that the court anticipated that the hearing also would address Mother's March 23, 2016 motion to compel the court to comply with Rule 1910.11 (which the court held in abeyance on April 1, 2016), and Mother's January 6, 2017 motion.

On February 10, 2017, Mother filed a petition for modification of the existing support order because one of her children was about to be emancipated. On that same day, Mother filed a praecipe to attach physician verification forms as exhibits. See Praecipe to Attach Exs., 2/10/17. These forms, some of which are duplicates, were signed by various physicians in January and February of 2017. The forms purported to list Mother's medical ailments and to identify limits on her employment. For example, one form stated that Mother cannot work as a registered nurse and can work only eight to twelve hours per week due to emotional exhaustion. Id. at 2. Another form stated that Mother must work part time during the day. Id. at 7. Yet another form stated that Mother has depression and can work only twelve hours per week. Id. at 13. Father did not file an objection to the physician verification forms, which meant that the forms were admissible without testimony by a physician. See Pa.R.Civ.P. 1910.29(b)(2).

At the March 1, 2017 hearing, the court acknowledged that the hearing was being held "pursuant to" its April 8, 2016 (dated April 1, 2016)

- 15 -

stay order,[13] Mother's January 6, 2017 motion to schedule a hearing, and Mother's February 10, 2017 petition to remove one child from the support order. N.T., 3/1/17, at 3. Father did not oppose Mother's February 10, 2017 petition that sought to remove one child from her support obligation. Id. Father's counsel also stated that, "As it relates to the underlying petition, which I believe [is] here on remand, for lack of a better thought, I believe that the final decision this [c]ourt made that was affirmed by the Superior Court on two separate bases should be reinstituted and form the basis of the order that we follow." Id.[14]

Mother, who appeared at the hearing pro se, reiterated that she was involuntarily terminated, her children were improperly taken from her, and she could not work as a nurse while she was under investigation for child abuse. N.T., 3/1/17, at 3-4. Mother noted that her main purpose was to reduce the amount of arrears. Id. Mother also testified:

> I was distraught with depression and anxiety and my condition has been aggravated by accusations that have never been ruled on. That the Court was very clear in her opinion that the ruling was based upon what my situation was three years ago.[15] And

_____

[13] As noted above, the trial court had stayed ruling on Mother's March 23, 2016 motion to compel the court to comply with Rule 1910.11 because of the then-outstanding appeal from its September 4, 2015 order.

[14] This Court's January 6, 2017 decision did not include a remand order.

[15] Mother appears to have been arguing that the trial court based its holding on her earning capacity as a registered nurse in 2014, prior to her clearances being withdrawn due to a November 2014 allegation of child abuse.

> besides the physician verification forms being consistent with the ones from the summer.[16] My condition was aggravated by the OCY ordeal which has not been considered in the court.

Id. at 5. Mother reiterated that any allegations of child abuse have been expunged, she has been taking medication, and she was undergoing counseling. Id. Mother seemed to argue that if she is mentally ill, she cannot be expected to work full-time as a nurse and to have left her job voluntarily. Id. at 5-6. Mother maintained that she cannot afford to pay the $789 in support because she made $37,000 pre-tax in 2014. Id. at 6. She claimed that she had been out of work since January 20, 2015, and was "barely working" from July 17, 2015, until November 23, 2015, when she was terminated because of a lack of clearances. Id.[17]

Father responded by introducing a February 12, 2015 letter from Saint Vincent Hospital stating that Mother was not terminated on January 20, 2015, and was offered two other positions that Mother "declined due to her personal schedule." N.T., 3/1/17, at 7-8 (counsel quoting letter); Father's Ex. A to 3/1/17 Hr'g. The letter, which was from the Hospital's Human Resources Department and addressed to Mother, stated:

_____

[16] As noted, Mother provided the forms in advance of the hearing pursuant to Rule 1910.29(b)(2). The record does not show that Mother took any additional action at the hearing to formally introduce the forms into evidence.

[17] As noted above, this Court observed that Mother was on an unpaid suspension between January and July 2015, which we held was not a voluntary reduction in employment. Ferris I, 2016 WL 7103916, at *5 n.5.

We had to remove you from working in the Emergency Department because you were convicted of child abuse and are on the national database as a perpetrator. Because of that conviction we had to remove you from working in areas where you would potentially come in contact with children. We identified two other areas, the ICU and the mental health unit (3R) where you would not be in contact with children. Kathryn Reeder (leader of 3R) and Rodney Buchanan (leader of Emergency Department) met with you on January 20, 2015 to discuss this. You have only been able to work part time, (per diem) and are only available on specific days and hours, due to your personal schedule. Kathryn offered to accommodate your specific requested work schedule. However, you declined the offer of work due to emotional stress. You stated that you would seek medical attention for this. On 2-12-15 you presented a note from your physician restricting you from working indefinitely.

Your employment status is per diem so under Saint Vincent's policy you are not required to pick up another shift until June 2015. We have had work available in 3R but at this time due to your physician's restrictions, you are not able to work.

Father's Ex. A to 3/1/17 Hr'g. The letter was admitted into evidence without objection. Father also assailed Mother's testimony as completely incredible. N.T., 3/1/17, at 8.

On March 6, 2017, the court ordered that Mother's earning capacity remain at $3,521.57, kept her monthly support obligation at $789 plus $90 in arrears, and further removed one child from the order as of June 6, 2017, the date that child would be emancipated:

This Order is entered as a result of a De Novo Hearing held 3/1/17 in accordance with Order dated 4/1/16 which held the decision in abeyance. This Order also addressed [Mother's] petition dated 2/10/17. [Mother] shall continue to pay $789.00/month support for three minor children as previously ordered. Minor child . . . is removed from the Order effective 6/6/17 as she will be emancipated. Support is recalculated using prior incomes for [Father] and [Mother]. Effective 6/6/17

- 18 -

> [Mother] shall pay $763.08/month support for two minor children. [Mother's] motion to schedule a hearing to rule on application for wage reduction is denied.

Order, 3/6/17. The order's last sentence referred to Mother's January 6, 2017 motion. The court's order did not include its reasoning.

Mother timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement identifying three issues:

> 1. The [trial court] disregarded the undisputed fact that Mother's job was terminated on November 23, 2015. Rather the Court gave weight to a letter that was written more than eight months before Mother was terminated; and more than three months prior to Mother's second indication for Emotional Child abuse. That letter had been previously introduced, and had to do with Mother's first indication; which had not caused the permanent loss of Mother's St. Vincent Hospital job when the letter was composed. The Mother was terminated from Saint Vincent Hospital due to the fact that Mother could not obtain her employment Abuse Clearance by its 11/23/2015 deadline, as her successful OCY Expungement Hearing was on December 4, 2015. Mother's income capacity dropped severely due to the expunged indications, and job loss caused the Mother extreme emotional and physical duress. She then sought the care of a psychiatrist and counselor, and was prescribed anti-depressants and anti-anxiety medication. Mother was unable to find any sort of work until March 2016. Mother's sharp reduction of income was due to illness, termination, job elimination or some other employment situation; none of which is voluntary; yet no corresponding and appropriate reduction in Mother's Support obligation was made.
>
> 2. The [trial court] did not recuse herself despite the conflict of interest involving the Father's wife, who works in the Erie County Courthouse and is directly acquainted with the judges and many members of the court and Domestic Relations staff.
>
> 3. On March 1, 2017[,] Mother went for a hearing regarding the Application for Support Reduction. In the resultant Order, the Court instead increased the monthly amount, by eliminating a downward deviation from the previous Order; for no stated reason, and with neither petition or request. Mother's downward

deviation was due to Father's wife's obtaining the courthouse position that she currently enjoys, and there was no cause to remove it.

Mother's Pa.R.A.P. 1925(b) Statement, 3/31/17.

On May 4, 2017, the trial court filed a Rule 1925(a) opinion. With respect to Mother's first issue, the court stated:

Mother first alleges that the [c]ourt erred by disregarding her November of 2015 termination from employment.[FN1] Mother asserts that Saint Vincent Health System terminated her after a second indicated report of child abuse precluded her from obtaining her child abuse clearances in a timely manner. Mother testified that the second indicated report of child abuse was expunged, but the hearing on expungement did not occur until subsequent to the due date of her clearances to her employer. Father asserts that Mother's own actions resulted in her job loss. In support of his claim, Father presented a letter from Saint Vincent Health System to Mother indicating that Mother refused jobs available to her, which did not require Mother to have clearances. The letter presented by Father does not coincide with Mother's termination date. Nevertheless, it demonstrates that, just nine months prior to Mother's termination, her employer was able and willing to provide her with a job despite an indicated child abuse report. Accordingly, Father's evidence contradicts Mother's testimony that, without her clearances, she is unable to work. For example, Mother testified that she has "been out of work since November 23rd but also technically since January 20th, that I could not work due to the first OCY charge." Similarly, she testified "no one can work at any job while indicated." Meanwhile the letter demonstrates that the OCY finding and Mother's resulting inability to obtain her clearances did not preclude her from working at Saint Vincent Health System. Not only was Mother's employer willing to provide her with an alternate position, but it was willing to do so on her terms of a limited schedule. Accordingly, it brings into question Mother's credibility on the issue that she was terminated because she could not obtain her clearances. In the months prior to her termination, Mother chose not to work, despite her employer's offer of employment, and then misled the Court regarding the situation. In that regard, there is credibility to Father's position that Mother is again failing to fully represent the circumstances of the end of her employment.

[FN1] To the extent that Mother continues to allege that she is medically unable to work due to depression and anxiety caused by the loss of her children, this issue has been fully litigated and cannot be raised again. Specifically, Mother raised this issue for consideration when the [c]ourt entered the September 4, 2015 child support order. Mother appealed the order and the Superior Court upheld this [c]ourt's determination that Mother did not meet her burden on the issue. Mother does not allege that her condition has worsened or in any way changed since entry of the September 4, 2015 order. She cannot use a petition for modification as a second chance to meet her burden.

Regardless, Mother's job loss does not demonstrate a material and substantial change in circumstances since entry of the last child support order. A court may only modify a child support order when the party requesting modification shows a material and substantial change in circumstances since the order was entered. At the time of entry of the 2015 order, Mother had already reduced her hours and income so substantially that she earned well below her earning capacity.[18] Specifically, she worked only four hours per week. Mother's loss of only four hours of income per week is simply not a material and substantial change in circumstances, particularly considering the recently affirmed earning capacity determination. The Court understands that the expungement would have allowed Mother to obtain her clearances, had it occurred in time. Nevertheless, the circumstances do not negate the fact that Mother, prior to imposition of the last support order, was working so woefully below her earning capacity that she was practically unemployed. In that regard, the fact that Mother now has a minimum wage job simply is not a material and substantial change in circumstances.

Trial Ct. Op. at 4-6 (citations omitted).

Mother's appellate brief raises the following issues:

_____

[18] In support of this statement, the trial court cited its Pa.R.A.P. 1925(a) opinion prepared in response to Mother's appeal from the September 4, 2015 order.

- 21 -

[1.] Whether the trial court erred and/or abused its discretion when it failed to consider the Mother's change in salary since 2013 to the present time of 2017[.]

[2.] Whether the court erred and/or abused its discretion when it found that the Mother suffered from a mental health condition that impacted her ability to care for her patients[.]

[3.] Whether the trial court erred and/or abused its discretion when disregarding an order from the court [that] acknowledges this is a different case with a different number and the court also knows that the Mother switched from being beneficiary of monthly child support, to being the obligee since it expressly states this.

[4.] Whether the court erred and[/]or[] abused its discretion in continuing to let Father continue to have full legal custody even when Mother has been cleared of all emotional abuse indications.

Mother's Brief at § V (unpaginated).[19]  Mother waived her last two issues, as they were not in her Rule 1925(b) statement.  See Pa.R.A.P. 1925(b)(4). Mother made no arguments in her appellate brief in support of those issues. We therefore limit our discussion to Mother's first two issues.

Initially, we are beset by confusion regarding the nature of the hearing before the trial court.  The docket reflects that on February 4, 2016, Father filed a pro se petition for modification, but no such petition is included in the record.  At the resulting February 24, 2016 office conference, the summary by the trier of fact indicates that the reason for the conference was to resolve Mother's petition to suspend her support obligation, but that petition

_____

[19] Mother included several documents in her reproduced record, such as the Saint Vincent letter purportedly terminating her, that do not exist in the certified record; accordingly, we have not considered them.  See generally Pa.R.A.P. 1921 (consideration of the certified record).

is not in the record or on the docket either. In any event, the officer forwarded the entire matter to the trial court, given the then-outstanding appeal, for a hearing on March 31, 2016. At that hearing, the court indicated the purpose of the hearing was to resolve Mother's phantom petition to suspend, Mother's March 23, 2016 motion, and Father's objection to Mother's praecipe to attach exhibits. The court stayed its rulings because of the outstanding appeal. Order, 4/8/16 (dated 4/1/16). After this Court resolved Mother's appeal on December 6, 2016, Mother filed a motion on January 6, 2017, titled "Motion to Schedule a Hearing to Rule on an Application for Wage Reduction," and another motion on February 10, 2017, to remove one child from the support order. In sum, the court's March 1, 2017 hearing was purportedly to resolve Mother's petition to suspend, as well as her motions filed on March 23, 2016, January 6, 2017, and February 10, 2017.

Given this procedural morass (which was complicated by references to Mother's seemingly nonexistent petition to suspend her support obligation) and given Mother's consistent arguments that relate to modification or reduction of her support obligation, we construe Mother's March 23, 2016 and January 6, 2017 motions as petitions for modification of an existing support order based upon a material and substantial change in circumstances namely, Mother's November 2015 termination from Saint Vincent Hospital.

The standard of review for an order resolving such a petition follows:

- 23 -

> A trial court's decision regarding the modification of a child support award will not be overturned absent an abuse of discretion, namely, an unreasonable exercise of judgment or a misapplication of the law. An award of support, once in effect, may be modified via petition at any time, provided that the petitioning party demonstrates a material and substantial change in their circumstances warranting a modification. See 23 Pa.C.S.A. § 4352(a); see also Pa.R.C.P. 1910.19.

Plunkard v. McConnell, 962 A.2d 1227, 1229 (Pa. Super. 2008) (some citations omitted), appeal denied, 980 A.2d 111 (Pa. 2009). "Where the evidence is insufficient to sustain the order, an abuse of discretion will be found." Grimes v. Grimes, 596 A.2d 240, 241 (Pa. Super. 1991) (citation omitted).

Mother interprets our decision resolving her appeal from the September 4, 2015 order to mean that so long as she had clearances and employment at Saint Vincent Hospital, she had the earning capacity of a full-time nurse. Mother insists that her claim of termination has never been litigated because the trial court's September 4, 2015 support order predated her November 2015 firing. Mother's Brief at 15-16 (unpaginated). Mother claims she could not work at all, as she was indefinitely suspended until her clearances were restored. Id. at 16. She states that she was fired because Saint Vincent Hospital was "tired of the endless entanglements, and fully expected another malicious OCY action regarding the third child." Id. Mother insists she presented evidence that she was "terminated with a proper letter," and that she unsuccessfully attempted to reapply for a nursing job at Saint Vincent and other nursing jobs after her clearances were

restored. Id. at 16-17. She appears to argue that because she could not obtain a full time nursing job due to her firing, she should not be imputed with the earning capacity of a full time nurse. Id. at 16. She claims that the abuse indications and custody issues have taken a "toll on Mother's emotional and physical health, leaving her with crippling migraines, reduced functionality and an inability to generate sufficient income." Id. at 17. Those physical and emotional problems now prevent her from working full time. Id.

Rule 1910.19 governs petitions for modification:

(a) A petition for modification or termination of an existing support order shall specifically aver the material and substantial change in circumstances upon which the petition is based. A new guideline amount resulting from new or revised support guidelines may constitute a material and substantial change in circumstances. The existence of additional income, income sources or assets identified through automated methods or otherwise may also constitute a material and substantial change in circumstances.

. . .

(c) Pursuant to a petition for modification, the trier of fact may modify or terminate the existing support order in any appropriate manner based upon the evidence presented without regard to which party filed the petition for modification. If the trier of fact finds that there has been a material and substantial change in circumstances, the order may be increased or decreased depending upon the respective incomes of the parties, consistent with the support guidelines and existing law, and each party's custodial time with the child at the time the modification petition is heard.

Pa.R.Civ.P. 1910.19(a), (c). "The burden of demonstrating a 'material and substantial change' rests with the moving party, and the determination of

whether such change has occurred in the circumstances of the moving party rests within the trial court's discretion." Plunkard, 962 A.2d at 1229.

Rule 1910.16-2(d) provides guidance on what constitutes a material and substantial change: [20]

> (d) Reduced or Fluctuating Income.
>
> (1) Voluntary Reduction of Income. When either party voluntarily assumes a lower paying job, quits a job, leaves employment, changes occupations or changes employment status to pursue an education, or is fired for cause, there generally will be no effect on the support obligation.
>
> (2) Involuntary Reduction of, and Fluctuations in, Income. No adjustments in support payments will be made for normal fluctuations in earnings. However, appropriate adjustments will be made for substantial continuing involuntary decreases in income, including but not limited to the result of illness, lay-off, termination, job elimination or some other employment situation over which the party has no control unless the trier of fact finds that such a reduction in income was willfully undertaken in an attempt to avoid or reduce the support obligation.

Pa.R.Civ.P. 1910.16-2(d)(1)-(2). As this Court in Beegle v. Rasler, 576 A.2d 1100 (Pa. Super. 1990), expressed:

> It is true that as a general rule the earning capacity, not the actual earnings, is the determinative factor in ascertaining the ability to pay support. This rule, however, is not without exceptions, such as those situations where the income is reduced involuntarily through illness, layoff or some other factor over which the parent has no control.

Id. at 1102 (citations omitted). Finally, "[t]his Court will not reverse credibility determinations as long as they are supported by the evidence."

_____

[20] Rule 1910.16-2 addresses the calculation of monthly income for purposes of identifying the amount of support that should be paid.

Morgante v. Morgante, 119 A.3d 382, 395 (Pa. Super. 2015) (reversing credibility determination given absence of testimonial support).

We must decide this case in the context of our earlier decision in Ferris I, in which we decided that the trial court did not err when it based its September 4, 2015 support order on Mother's potential earning capacity and held that Mother had failed to prove that her income had involuntarily been reduced as a result of her physical and emotional condition. Our decision on those issues is binding as the law of this case, and the trial court correctly held it was not free to depart from them. Nevertheless, Mother was entitled to try to show that conditions had changed since the September 4, 2015 support order and that her support obligations should be modified in light of those changed conditions.

Mother contends that her November 2015 termination from Saint Vincent Hospital was a "material and substantial change in circumstances" that entitled her to an adjustment of her support obligation. See Pa.R.Civ.P. 1910.19(a), (c). She contends that because of the firing, her earning capacity as a nurse was "reduced involuntarily through illness, layoff or some other factor over which [she had] no control." Beegle, 576 A.2d at 1102. Mother promptly filed a petition for modification after she was terminated. At the office conference, however, the officer focused on Mother's pre-termination earning capacity, which was then on appeal to this Court. Summary of Trier of Fact, 1/13/16, at 2. There was no indication

that the officer addressed whether Mother's income was reduced involuntarily in November 2015. See Beegle, 576 A.2d at 1102.

On February 24, 2016, Mother again asserted she was terminated because she could not obtain child abuse clearances, as her last indication of abuse was not expunged until December 2015. The officer noted that Mother sought to provide updated medical documentation regarding her ability to work. Father countered that the medical documentation was previously considered and found deficient on September 4, 2015, but in fact the court never considered the medical documentation because it sustained Father's objection to its presentation. Father also asserted Mother was terminated for cause. The officer opted to refer the matter to the trial court, which, after a hearing, ultimately, stayed its ruling pending the outcome of the then-outstanding appeal. Order, 4/8/16.

On March 1, 2017, the trial court again held a hearing on Mother's petitions for modification of support due to material and substantial change in circumstances, and it denied the petitions. The court's Rule 1925(a) decision explaining its ruling focuses largely on Saint Vincent's February 12, 2015 letter, but that letter predated Mother's November 2015 termination by nine months. See Father's Ex. A to 3/1/17 Hr'g. The letter cannot establish whether Saint Vincent fired Mother for cause or terminated her for lack of clearances nine months after it was written.[21] The trial court held, however,

_____

[21] It may be that the letter could implicate Mother's earning capacity and her
(Footnote Continued Next Page)

- 28 -

that the letter was probative of Mother's lack of credibility regarding whether she was involuntarily terminated in November 2015. While we acknowledge that credibility determinations are within the sole province of the fact-finder, they must be supported by the record. See Morgante, 119 A.3d at 395. Other than arguing that Mother's testimony was not credible, Father did not offer any other evidence to rebut Mother's testimony, N.T., 3/1/17, at 3-4, that she was involuntarily terminated.

The court then opined that Mother's termination was not a material and substantial change in circumstances because Mother was underemployed and earning below her earning capacity. See Trial Ct. Op. at 5. In support, the trial court referenced its Rule 1925(a) opinion (which predated Mother's termination) and this Court's memorandum decision, neither of which addressed the circumstances of Mother's November 2015 termination. The trial court reasoned that since Mother had worked only four hours per week, a loss of those hours is not a material and substantial change in circumstances, "particularly considering the recently affirmed earning capacity determination." Id.[22] Whether Mother was underemployed as compared to her earning capacity does not address Mother's assertion

(Footnote Continued) ——————————

ability to work at Saint Vincent in February 2015, and, perhaps, subsequently. But the letter simply does not, and could not, address the circumstances surrounding Mother's November 2015 termination.

[22] The trial court's reasoning does not acknowledge scenarios involving low-hour, high-income wage earners, but we recognize that the facts do not suggest that this scenario is applicable here.

that she was involuntarily laid off. See Pa.R.Civ.P. 1910.16-2(d); see Beegle, 576 A.2d at 1102.

Related to all of these issues is Mother's continued insistence that her reduced work hours are the result of ongoing physical and emotional disabilities. The trial court held that our decision affirming its September 4, 2015 order fully resolved that issue, and that Mother is precluded from raising it again. Trial Ct. Op. at 4 n.1. The trial court has never considered Mother's medical evidence on this issue, however. In 2015, the court sustained Father's objection to the medical documentation Mother sought to submit at that time — an evidentiary ruling that this Court affirmed. See Ferris I, 2016 WL 7103916, at *4. But at the 2017 hearing, Mother referenced new medical documentation about her present condition, and Father did not object to those forms' admissibility. Because the Physician Verification Forms were signed by Mother's physicians in January and February of 2017, they provide information about Mother's current condition, in contrast to the information proffered in 2015. The trial court stated that Mother does not contend that her medical condition has changed, but Mother's testimony at the hearing included assertions that her condition "has been aggravated" and is different from "what my situation was three years ago," and that her aggravated condition "has not been considered in the court." N.T., 3/1/17, at 5. No court has ever addressed the substantive

merit of Mother's medical evidence.[23]

Given these deficiencies, we deem it appropriate to vacate the order below, and remand with instructions to hold a de novo hearing to resolve whether Mother's earning capacity as a nurse was "reduced involuntarily through illness, layoff or some other factor over which the parent has no control." See Beegle, 576 A.2d at 1102. All issues properly raised and preserved by Mother shall be addressed.[24]

Order vacated. Case remanded for further proceedings.[25] Jurisdiction relinquished.

_____

[23] We also note that the February 12, 2015 letter from Saint Vincent Hospital on which the trial court so heavily relied stated that the "personal schedule" that limited Mother's work hours at that time was the result of a claim by Mother to "emotional stress" for which she was seeking medical attention and about which she had "presented a note from [her] physician restricting [Mother] from working indefinitely." See Father's Ex. A to 3/1/17 Hr'g. This information is relevant to the trial court's assessment of Mother's credibility with respect to her employment at Saint Vincent. The trial court's holding that it could not consider such evidence may have interfered improperly with that credibility assessment.

[24] If Mother wishes to present medical evidence in support of her position, she shall comply with Rule 1910.29(b)(2).

[25] Because of our disposition, we do not address Mother's other arguments.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  12/27/2017